Bill BAKER, et al., Plaintiffs,

v.

Robert CHARLES, Defendant.

Civil No. 95–183–P–H.

United States District Court,
D. Maine.

Feb. 16, 1996.

Sumner H. Lipman, Laura J. Garcia, Lipman & Katz, P.A., Augusta, ME, for Plaintiffs.

Richard L. O'Meara, Murray, Plumb & Murray, Portland, ME, for Defendant.

## ORDER ON THE DEFENDANT CHARLES'S MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

This case probes the extent of First Amendment and common law protection for a private citizen who petitions a state administrative agency on a subject within its jurisdiction. Surprisingly, the protection turns out to be not very broad. Examination of United States Supreme Court caselaw and Maine Law Court caselaw leads me to the conclusion that if a private figure plaintiff who claims to be defamed by a First Amendment petition can show that the defamer was motivated by ill will, then statements that are false by reason only of negligence are nevertheless actionable.

### BACKGROUND

Since the issues are presented on the defendant's motion for summary judgment, I report the facts in the light most favorable to the plaintiffs. These facts, however, are hotly disputed.

In September of 1993, the defendant Robert Charles and his wife arrived at Monhegan Island off the Maine coast for a stay in a cottage that they had rented through the plaintiffs, Bill Baker and Amy Melenbacker. Shortly after arriving, Charles went to Melenbacker to complain about the condition of the cottage. After an exchange of words, Melenbacker ultimately fled the scene in tears and Baker called the local constable. Mr. and Mrs. Charles stayed in the rental cottage for the remainder of their two-week vacation.

Upon returning to his home in Washington, D.C., Charles, a lawyer, wrote a Sep-

tember 10, 1993, letter on law firm stationery to Maine's Land Use Regulation Commission ("LURC"). The letter complained about Melenbacker's and Baker's activities on Monhegan Island and challenged their recent request for an advisory ruling regarding potential modifications to their property. Charles wrote the letter within two weeks of his island confrontation with Baker and Melenbacker. Charles never contacted Melenbacker and Baker about his concerns before or after writing the letter. The letter has been a matter of public record since LURC received it.

Melenbacker and Baker voluntarily withdrew their application from LURC in December of 1993, in light of what they perceived as a change of attitude on LURC's part that fall. They did not learn of Charles's letter, however, until an acquaintance brought it to their attention in the summer of 1994.

Melenbacker and Baker have filed suit against Charles and his (then) law firm alleging defamation, intentional infliction of emotional distress, interference with economic relations, and abuse of process, and seeking punitive damages. The defendants removed the case from state court, based upon diversity of citizenship. *See* 28 U.S.C. §§ 1332(a), 1441(b). I dismissed the complaint as to the law firm defendant for lack of personal jurisdiction. The defendant Robert Charles now moves for summary judgment on all counts, claiming, among other things, that his letter was privileged.

### First Amendment Protection

■ Charles's letter to LURC, a state agency, concerning a matter under LURC's jurisdiction, is undoubtedly included within the protection of the First Amendment right to petition the government for redress of grievances. *California Motor Transport Co. v. Trucking Unltd.,* 404 U.S. 508, 510, 92

S.Ct. 609, 611–12, 30 L.Ed.2d 642, 646 (1972). In *McDonald v. Smith,* 472 U.S. 479, 485, 105 S.Ct. 2787, 2791, 86 L.Ed.2d 384, 390 (1985), the Supreme Court held that this right of petition (there to the President) has no greater or different protection than free speech generally. The Court in *McDonald* held specifically that petitions have no absolute immunity under the Constitution against defamation actions and that "petitions to the President that contain intentional and reckless falsehoods 'do not enjoy constitutional protection.' ...." 472 U.S. at 484, 105 S.Ct. at 2791, 86 L.Ed.2d at 389–90 (quoting *Garrison v. Louisiana,* 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964)).

■ Beyond this last statement, the scope of *McDonald* is open to considerable doubt. The Court upheld North Carolina's definition of defamation as constitutional notwithstanding the First Amendment right of petition, observing that North Carolina permitted liability only if the plaintiff could show "malice." 472 U.S. at 485, 105 S.Ct. at 2791, 86 L.Ed.2d at 390. But the defamation plaintiff in that case was a candidate for United States Attorney and thus would qualify as a public figure (unlike the plaintiffs here) and the issue was his qualification for office, a matter of public concern. Under general First Amendment doctrine, a public figure must meet a higher standard in a defamation lawsuit: unlike ordinary people, *see Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347, 94 S.Ct. 2997, 3010–11, 41 L.Ed.2d 789, 809 (1974), a public figure must prove "actual malice" to recover even compensatory defamation damages. *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094, 1111 (1967); *see New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964). Unfortunately, in *McDonald* the Court gave no indication whether either the public figure status of the plaintiff there or the public concern at issue was relevant to its holding.[1]

---

1. To complicate matters, the Court went on to say that North Carolina considered its definition of malice to be "consistent with *New York Times Co. v. Sullivan,*" yet also referred to North Carolina's definition as "knowledge at the time that the words are false, or ... without probable cause or without checking for truth by the means

at hand." 472 U.S. at 485, 105 S.Ct. at 2791, 86 L.Ed.2d at 390. The latter two options sound much like a negligence standard, whereas the "actual malice" of *New York Times* clearly requires at least reckless disregard or its equivalent. *See* 376 U.S. at 279–80, 84 S.Ct. at 726–27, 11 L.Ed.2d at 706–07; *see also St. Amant v.*

*McDonald*'s ambiguity has divided the only lower court to consider it. A majority of the Eighth Circuit Court of Appeals *en banc* has read *McDonald* narrowly to require proof of actual malice only when the plaintiff bringing the defamation action is a public figure. *In re IBP Confidential Documents Litig.,* 800 F.2d 787, 788 (8th Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1293, 94 L.Ed.2d 150 (1987). But Judge Richard Arnold wrote a dissenting opinion joined by three other judges arguing that *McDonald* established that " '*whenever* the right to petition is exercised, that right is afforded the protection of the actual malice standard; the nature of the communication and not the *status* of the defamation plaintiff is the touchstone.' " 800 F.2d at 789 (quoting the petition for rehearing; emphasis original).

If Judge Arnold's dissent were the law, this would be an easy case, for the plaintiffs on this summary judgment record cannot show by clear and convincing evidence, *Gertz,* 418 U.S. at 342, 94 S.Ct. at 3008, 41 L.Ed.2d at 807, that actual malice under the *New York Times* standard is present. On the evidence most favorable to the plaintiffs, Charles's letter may be negligently, but it is not recklessly, off the mark. The plaintiffs here are not public figures, however, and the defendant has not argued that their business expansion is a matter of public concern, or even that the latter determination would be relevant under *McDonald*. Given the Supreme Court's broad language in *McDonald* asserting that the right to petition is to be treated the same as other First Amendment rights, it seems safer for me as a trial judge to conclude that proof of actual malice is not constitutionally required. Under that reasoning, the only constitutional requirement for defamation damages under the First Amendment is that strict liability not be imposed, *Gertz,* 418 U.S. at 347, 94 S.Ct. at

3010–11, 41 L.Ed.2d at 809–10; *see also Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 763, 105 S.Ct. 2939, 2947, 86 L.Ed.2d 593, 605 (1985) (plurality opinion) (when defamatory statements about a private individual do not involve matters of public concern, recovery of presumed and punitive damages absent a showing of "actual malice" is constitutional).

## MAINE LAW

In any event, Maine law does not recognize strict liability for defamation. The Maine Law Court has held that a plaintiff must prove at least negligence in order to recover in an action for defamation. *See Lester v. Powers,* 596 A.2d 65, 69 (Me.1991). I turn therefore to explore what qualified privilege may be available under Maine common law. Maine's Law Court has generally adopted the Restatement (Second) of Torts ("Restatement") in its development of common law defamation. *See, e.g., Staples v. Bangor Hydro–Elec. Co.,* 629 A.2d 601, 604 (Me.1991). The applicable provision here is § 598:

> An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that
>
> (a) there is information that affects a sufficiently important public interest, and
>
> (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true.

That definition certainly includes communications to a governmental agency like LURC on subjects within its jurisdiction, like those addressed in Charles's letter. *See* Restatement § 598 cmt. e ("The rule stated in this Section is applicable to defamatory communications to public officials concerning matters that affect the discharge of their duties.").[2]

---

*Thompson,* 390 U.S. 727, 730–33, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262, 266–68 (1968).

**2.** The topics addressed in the letter satisfy the common law standard for information affecting a "public interest." *See* Restatement § 598 cmt. e ("[I]t is desirable that the officers obtain information and data tending to disclose the extent and character of [social, economic and political] problems.... Testimony offered before ...

commissions and other bodies properly authorized to conduct investigations is conditionally privileged unless the investigation is a judicial or legislative proceeding, in which case the testimony is absolutely privileged.") However, it is unclear—and the defendant nowhere argues—that the letter's contents rise to matters of "public concern" in the constitutional sense. *See Dun & Bradstreet,* 472 U.S. at 758–62, 105 S.Ct. at 2944–47, 86 L.Ed.2d at 601–05; *Connick v.*

Then, according to the Law Court, the burden is on the defamation plaintiff seeking to overcome the privilege to prove by a preponderance of the evidence *either* that the utterer "knew his statement to be false or recklessly disregarded its truth or falsity, i.e. entertained a high degree of awareness of probable falsity or serious doubt as to the truth of the statement,"—essentially the First Amendment standard of actual malice—*or* that the utterer "acted entirely out of ill will" toward the defamed plaintiff, *Staples,* 629 A.2d at 603—a separate way of overcoming the privilege. *See* Restatement §§ 600, 603.

▆ As I have said, the plaintiffs here cannot meet the knowing or reckless falsity prong on the summary judgment record, but there is evidence from which a fact-finder could conclude that Charles did act entirely out of ill will toward the plaintiffs. Specifically, a jury could disbelieve Charles's explanation that he wrote and sent the letter to LURC at the request of other Monhegan Island residents in a sincere attempt to ensure that LURC based its determinations upon proper facts. Instead, the jury might believe that Charles was motivated by nothing more than vindictiveness or retaliation for what he considered shabby treatment at the hands of the plaintiffs in connection with his summer vacation. The jury need not reach that conclusion, but it might. Such a finding by the jury would be sufficient to void the Maine common law conditional privilege.

▆ In that event, the plaintiffs would have to prove by a preponderance of the evidence only negligent defamation. Under Maine law, if a publication is not privileged, defamation consists of (1) a false and defamatory statement; (2) fault amounting at least to negligence on the part of the speaker; and (3) special harm caused by the publication or a statement that is actionable regardless of special harm. *Lester,* 596 A.2d at 69. In this case, the letter carries the message that Charles is privy to unspecified information from longtime residents of the island and that this information, coupled with his review of the papers the plaintiffs sent to LURC, demonstrates that Melenbacker and Baker are individuals with "self-dealing or illicit intentions" who previously have "taken advantage" of the community and have once again "recent[ly] attempt[ed] to take advantage"; that they have "presented inaccurate facts to state authorities in an attempt (the most recent) to receive certain permits and grants"; that "virtually all town members recognize that the State of Maine has been rather hoodwinked" as a result; that members of the Island community "believe that Monhegan's zoning laws are being intentionally violated" by the plaintiffs; and so forth. It requires little analysis, therefore, to conclude that the content of the letter is defamatory. Its falsity is in dispute on the current record—for example, whether the plaintiffs in fact have taken advantage or attempted to take advantage; whether the facts they presented to state authorities were inaccurate; what other members of the Monhegan Island community have said or now believe; etc. Truth is an affirmative defense and the burden of proof lies with Charles, since this case involves private figures and no media defendant. *Ramirez v. Rogers,* 540 A.2d 475, 477–78 (Me.1988); *see also Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 779 n. 4, 106 S.Ct. 1558, 1565 n. 4, 89 L.Ed.2d 783, 794 (1986). As I have stated, the plaintiffs cannot meet their burden of proof of showing that Charles was intentionally or recklessly false in his statement, but negligence—coupled with ill will, if ill will was his sole purpose—is sufficient under Maine law. The parties have not addressed this issue of negligence, perhaps due to their misunderstandings of the constitutional and common law privileges for petitioning and abuse of those privileges. The final factor, special harm, also has not been argued by the defendant. Consequently, the defendant Charles is not entitled to summary judgment on the defamation claims.

Because the defendant Charles has not argued whether his letter addressed a "matter of public concern" in the constitutional

---

*Myers,* 461 U.S. 138, 146–49, 103 S.Ct. 1684, 1689–91, 75 L.Ed.2d 708, 719–22 (1983). These terms of art may overlap somewhat, but they derive from different sources of law and their meanings are not necessarily identical.

sense and because there are genuine issues of material fact as to whether the defendant was motivated solely by ill will, it would be inappropriate for me to grant summary judgment on the punitive damages claims. *See Dun & Bradstreet,* 472 U.S. at 763, 105 S.Ct. at 2947, 86 L.Ed.2d at 605 (private figure plaintiffs must show "actual malice" by clear and convincing evidence only where defamatory speech addresses matters of public concern); *Staples,* 629 A.2d at 604 (under Maine common law, punitive damages claims require proof of ill will or outrageous conduct implying malice in fact by the clear and convincing standard).

▆▆▆▆ I do **GRANT** the defendant Charles's summary judgment motion on the issues of interference with an economic relationship and abuse of process. As a matter of law the plaintiffs had no "economic relationship" with LURC, a governmental agency, *see Grover v. Minette–Mills, Inc.,* 638 A.2d 712, 716 (Me.1994); *Devine v. Roche Biomedical Labs., Inc.,* 637 A.2d 441, 447 (Me.1994), and their claim that Charles otherwise interfered with their future economic expectations by altering LURC's perceptions of them has no basis in Maine tort law. *See Barnes v. Zappia,* 658 A.2d 1086, 1089 (Me. 1995), citing *MacKerron v. Madura,* 445 A.2d 680, 683 (Me.1982) ("[T]he principles of the law of interference ... are equally applicable in [the attorney-client] situation *as in other employment or contract situations.*" (emphasis added)). I also find as a matter of law that a letter or petition to an executive agency does not furnish grounds for the common law tort of "abuse of process." All such cases in Maine deal with court-related process. *See, e.g., Packard v. Central Maine Power Co.,* 477 A.2d 264, 267 (Me.1984); *Goucher v. Dineen,* 471 A.2d 688, 689 (Me. 1984); *Nadeau v. State,* 395 A.2d 107, 117 (Me.1978). I also **GRANT** summary judgment on the intentional infliction of emotional distress claims. I conclude as a matter of law that the conduct described by the plaintiffs does not meet the stringent standard imposed by Maine law. Specifically, the defendant's conduct must be "so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community.'" *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979) (quoting Restatement § 46 cmt. d). Viewed in the light most favorable to the plaintiffs, Charles's conduct may have been rude, belligerent, uncivil and vindictive, but it does not meet the standard for this common law tort.

### CONCLUSION

Accordingly, summary judgment is **GRANTED** on Counts II, III and IV and **DENIED** on Counts I and V.

**So ORDERED.**