Kathryn ERSKINE *

v.

COMMISSIONER OF CORRECTIONS et al.

Supreme Judicial Court of Maine.

Argued June 12, 1996.
Decided Aug. 15, 1996.

---

* Michael J. Orsini, an original plaintiff in this action, died on January 1, 1993. His widow, Kathryn Erskine, pursues the suit both in her capacity as the personal representative of his estate and as the remaining plaintiff in the action.

Francis M. Jackson (orally), Portland, for Plaintiff.

Andrew Ketterer, Attorney General, Paul Stern (orally), Assistant Attorney General, Augusta, for Defendants.

Before WATHEN, C.J., and ROBERTS and GLASSMAN, JJ.

ROBERTS, Justice.

Plaintiff Kathryn Erskine appeals from the judgment entered in the Superior Court (Cumberland County, *Saufley, J.*) in favor of the defendants [1] on their motion for a summary judgment. She challenges the action of the Superior Court (*Lipez, J.*) in granting the defendants relief from a default judgment. Erskine also contends that the existence of genuine issues of material fact preclude the granting of a summary judgment. Finding no abuse of discretion or error, we affirm the judgment.

This action arises from an incident in October 1989 at the Maine State Prison in Thomaston during which Michael J. Orsini was beaten by a fellow inmate and suffered physical injuries. While Orsini was in the prison cafeteria, Arnold Robinson, unexpectedly and without provocation, hit him with a metal tray. Orsini suffered injuries to his face and eye. Immediately following the incident, Robinson was removed from the cafeteria and placed in segregation. Erskine does not suggest that prison officials had any specific reason to expect the attack on Orsini that day. Erskine does contend, however, that Robinson's past history had alerted prison officials to the danger of such conduct.

Erskine's complaint sought, *inter alia,* damages pursuant to the Maine Tort Claims Act, 14 M.R.S.A. §§ 8101–8118 (1980 & Supp. 1995), as a result of the defendants' negligent failure properly to ensure Orsini's safety, and damages pursuant to 42 U.S.C. § 1983 (1994) for violations of Orsini's constitutional rights. In their answer, the defendants raised the affirmative defenses of sovereign and qualified immunity, M.R.Civ.P. 8(c).

On September 2, 1992, a request for the production of documents was served on the defendants' lawyer, then Assistant Attorney General Terrance Brennan.[2] On October 9, 1992, having failed to obtain such discovery, Erskine moved to compel production. On November 4, 1992, the court (*Lipez, J.*) entered an order requiring the defendants to produce the documents within ten days. After Brennan failed to comply with the court's order, Erskine moved for the imposition of sanctions pursuant to M.R.Civ.P. 37(a)(2). The defendants failed to respond to that motion, as required by M.R.Civ.P. 7(c), thus waiving their objection to it. On January 12, 1993, the court ordered the entry of a default judgment, on the issue of liability against the defendants.

In September 1993 the defendants moved for relief from the default judgment pursuant to M.R.Civ.P. 55(c), 60(b)(4), and 60(b)(6). In support of the motion, the defendants filed affidavits of Brennan and his superior stating that Brennan is an alcoholic who, at the time of this litigation, had been rendered unable to adequately perform his job. Specifically, Brennan avers that his alcoholism was the direct cause of his failure to provide discovery in this case.[3] Brennan states that he concealed the fact of the default judgment from the defendants and his superiors at the Attorney General's office. After a hearing, the court (*Lipez, J.*) granted the defendants'

---

**1.** The defendants in this case are the State of Maine, the Commissioner of Corrections, the Warden and Deputy Warden of the state prison, and various prison officials and guards.

**2.** Brennan has been disbarred from the practice of law, with authorization to petition for reinstatement after one year. *Board of Overseers of the Bar v. Brennan,* BAR–95–6 (Dec. 26, 1995) (*Dana, J.*). In its decision, the Court found that Brennan is an alcoholic; that by the fall of 1991, his drinking had become such a serious problem that he often was unable to do his job; and that he lied to his superiors in the Attorney General's office about the status of his cases.

**3.** The facts in this case are similar to those in *Maynard v. Commissioner of Corrections,* 681 A.2d 19 (Me.1996), a case in which the trial court set aside a default judgment it had entered against the State following Terrance Brennan's failure to provide the plaintiffs with discovery. Relying on the rule in *Drake v. Smith,* 390 A.2d 541, 543 (Me.1978), that the sovereign may not waive its immunity through the imposition of a procedural default, we affirmed the trial court's decision. *Maynard* involved only state law claims. *Maynard,* 681 A.2d at 21 n. 3.

motion for relief pursuant to M.R.Civ.P. 55(c).

After discovery materials finally were provided by the defendants, they moved for a summary judgment. The court (*Saufley, J.*) entered a summary judgment in favor of the defendants on all counts. Erskine now challenges both the court's order setting aside the entry of the default judgment and the court's order granting a summary judgment.

## I.

■ Erskine contends that the court abused its discretion in finding that Brennan's alcoholism constitutes a good excuse for failure to comply with the discovery order. She argues that the defendants ought not be relieved from the entry of the default judgment because the Attorney General failed to properly supervise Brennan's work habits.

■ M.R.Civ.P. 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." To meet this standard, a party must demonstrate both a good excuse for the failure that led to the default, as well as the existence of a meritorious defense. *Design Build of Maine v. Paul*, 601 A.2d 1089, 1091 (Me. 1992). In light of the court's familiarity with the case and the opportunity to evaluate the credibility and good faith of the parties, considerable deference is accorded a court's disposition of a motion to set aside a default or a default judgment. 2 FIELD, MCKUSICK & WROTH, MAINE CIVIL PRACTICE § 55.7 (2d ed. 1970 & Supp.1981).

■ The trial court properly relied on Rule 55(c) in vacating the default judgment. Because a judgment on liability was entered by the court against the defendants as a sanction for their noncompliance with discovery obligations, we apply the lesser "good cause" standard of review articulated in Rule 55(c) in our review of its decision and not the higher "excusable neglect" standard set forth in Rule 60(b). *Carruthers v. Mopeds of Maine, Inc.*, 539 A.2d 1104, 1105 (Me.1988). The entry of a default judgment on the issue of liability, pending a hearing on damages, is not a final judgment for purposes of Rule 60(b). *Id.* at 1106; *Michaud v. Mutual Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 790 (Me.1986). In *Michaud* we held that the entry of a default judgment as to liability in a medical malpractice action pending a hearing on damages constituted an entry of a default, subject to being set aside on a showing of good cause rather than excusable neglect. *Id.* at 790 (citing *Cocklereece v. Moran*, 500 F.Supp. 487, 490–91 (N.D.Ga.1980) ("The entry of default is the equivalent of 'default judgment as to liability.' ")). In so doing, we reiterated the familiar rule, applicable to the instant matter, that "a final default judgment cannot be entered until the amount of damages has been ascertained." *Michaud*, 505 A.2d at 790; *see also Carruthers*, 539 A.2d at 1105–06 (insurer did not demonstrate "good cause" to justify setting aside a default judgment entered on the issue of liability alone). In this case, damages had not been assessed at the time of the motion for relief, and the trial court properly applied a good cause standard in setting aside the sanction.

■ The imposition of sanctions by a court for a party's failure to comply with discovery obligations is highly discretionary. *Shaw v. Bolduc*, 658 A.2d 229, 234–35 (Me. 1995). We in turn accord great deference to a court's decision to set aside a prior default judgment entered as a sanction for such noncompliance. In this case the trial court specifically found that good cause existed to set aside the default judgment pursuant to Rule 55(c) because "the default [judgment] resulted from the illness of prior counsel, ... there has been no prejudice to plaintiffs, [and] defendants have sufficient meritorious defenses to warrant that this case be decided on the merits...." Our review of the record reveals that the court acted within its discretion in setting aside its prior entry of a judgment as to liability as a sanction for the defendants' discovery violations.

## II.

■ When reviewing a summary judgment, we view the evidence in a light most favorable to the party against whom the judgment has been granted, and independently determine whether the record sup-

ports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law. *Green v. Cessna Aircraft Co.,* 673 A.2d 216, 218 (Me.1996). A summary judgment in favor of a defendant is appropriate "when the plaintiff has the burden of proof on an essential element at trial and it is clear that the defendant would have been entitled to a directed verdict at trial if the plaintiff presented no more evidence than was before the court at the hearing on the motion for summary judgment." *Guiggey v. Bombardier,* 615 A.2d 1169, 1171 (Me.1992).

### A.

█ Erskine contends that the questions whether Orsini was exposed to a substantial risk by prison officials and whether those officials were recklessly indifferent to his rights are matters of fact for a jury to decide. She also argues that, contrary to the court's ruling, Orsini's right to be protected from violence by other inmates was an established right meriting protection. We disagree.

█ Government officials who perform discretionary functions may not be held liable for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Creamer v. Sceviour,* 652 A.2d 110, 113 (Me.1995) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The determination whether a right is "clearly established" for purposes of liability is a question of law. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985). In making such a determination, a court considers the law as it existed at the time of the alleged violation. *Creamer,* 652 A.2d at 113; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

█ Erskine contends that Orsini's Eighth Amendment right to be free from cruel and unusual punishment was violated when he was allowed to become the object of Robinson's violence. "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Cortes-Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.), *cert. denied,* 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988). Not every injury, however, suffered by one prisoner at the hands of another creates constitutional liability for prison officials. *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811, 823 (1994). Although the issue of Orsini's safety is implicated by the Eighth Amendment, *see Farmer, id.* at ——–——, 114 S.Ct. at 1976–77, 128 L.Ed.2d at 822; *Ingraham v. Wright,* 430 U.S. 651, 669–70, 97 S.Ct. 1401, 1411–12, 51 L.Ed.2d 711 (1977), the defendants, as prison officials, may not be held liable for having *negligently* failed to protect Orsini.

█ The established law at the time of the attack required that to prevail Erskine must show "recklessness" or "deliberate indifference" to Orsini's constitutional rights on the part of the defendants.[4] *Darling v. Augusta Mental Health Inst.,* 535 A.2d 421, 431 & n. 11 (Me.1987); *Williams v. City of Boston,* 784 F.2d 430, 433–34 (1st Cir.1986). "A prisoner who merely establishes negligence but does not show either actual knowledge of the danger, or danger objectively so great that actual knowledge of the danger can be inferred, cannot prevail [on a motion for a summary judgment based on a section 1983 claim]." *Duane v. Lane,* 959 F.2d 673, 676 (7th Cir.1992). Erskine has failed to demonstrate that Robinson's unrestricted presence in the general prison population in October of 1989 presented an objectively identifiable substantial risk of serious harm to other inmates, that the prison officials knew of that

---

4. Although decided after the relevant date in this action of October 9, 1989, the United States Supreme Court recently elaborated on the definition of "deliberate indifference" for purposes of Eighth Amendment considerations and section 1983 liability. In *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Court held that for a plaintiff to recover under an Eighth Amendment claim, she must demonstrate both the existence of a substantial risk of serious

harm and show that officials acted or failed to act despite knowledge of that risk. *Id.* at ——–——, 114 S.Ct. at 1978–79, 128 L.Ed.2d at 825. Adopting a subjective test, the Court stated that "to survive summary judgment, [a plaintiff] must come forward with evidence from which it can be inferred that the defendant-officials ... knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm...." *Id.* at ——–——, 114 S.Ct. at 1983–84, 128 L.Ed.2d at 831.

risk, and that they acted with deliberate indifference in disregarding that risk.

Despite their knowledge of Robinson's violent nature, the defendants are entitled to the defense of qualified immunity for purposes of section 1983 liability. The trial court did not err in finding that Erskine has failed to generate any issue that Robinson's behavior was of the type to alert the defendants to a *substantial risk* of serious harm to Orsini or others, or that the defendants acted with *deliberate indifference* regarding the matter.

### B.

■ Erskine also contends that the defendants failed to prove that they were engaged in discretionary as opposed to ministerial functions for purposes of immunity under the Maine Tort Claims Act. Contrary to her contention, the law is clear that the defendants' actions in setting policies, training and supervising personnel, and taking precautions to protect inmate safety are protected by discretionary immunity pursuant to section 8111(1)(C) of the Act.

■ The Act provides discretionary immunity to government employees for conduct that is within the scope of their employment.[5] As we have noted before, such immunity "insulates from personal liability a government employee who has been legislatively authorized to perform some discretionary function and 'has acted, or has failed to act, pursuant to that authorization.'" *Darling*, 535 A.2d at 425 (quoting *True v. Ladner*, 513 A.2d 257, 260 (Me.1986)). In view of the factors we described in *Darling*, the court did not err in determining that the defendants' alleged misconduct falls within the discretionary function immunity contemplated by the Act. *Id.* at 426. The gravamen of Erskine's complaint is that the defendants

negligently promulgated policies, failed to appropriately train the staff, and failed to take precautions to protect Orsini from Robinson. The management and care of prisoners is a discretionary function. *Ellis v. Meade*, 887 F.Supp. 324, 331 (D.Me.1995). Such supervision "is at the core of the discretionary function immunity." *Darling*, 535 A.2d at 426; *see also Miller v. Szelenyi*, 546 A.2d 1013, 1021 (Me.1988) (supervision, management, and control of persons protected by discretionary immunity). Accordingly, the court properly granted a summary judgment in favor of the defendants on this claim.

No other issue raised by Erskine warrants discussion.

The entry is:

Judgment affirmed.

All concurring.

---

**5.** 14 M.R.S.A. § 8111(1)(C) (Supp.1995) provides:

   **1. Immunity.** Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:

   . . . .

   **C.** Performing or failing to perform any discretionary function or duty, whether or not

the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid[.]

