2001 ME 182

**Janet E. TRUMAN**

v.

**Marjorie BROWNE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 19, 2001.

Decided: Dec. 28, 2001.

Stephen P. Beale, Esq., Skelton, Taintor & Abbott, P.A., Auburn, for plaintiff.

Marjorie Browne, Norway, for defendant.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.*

ALEXANDER, J.

[¶ 1] Marjorie Browne appeals from the default judgment entered in the Superior Court (Oxford County, *Gorman, J.*) awarding compensatory damages to Janet E. Truman on Truman's libel claim and permanently enjoining Browne from publishing the libel. Browne argues that the court erroneously entered judgment on her default, that Truman waived her right to a default, and that the preliminary injunction unduly limited her ability to develop evidence relating to liability. She also argues that the court erred by awarding attorney fees and by entering a permanent injunction. We affirm the entry of the default judgment but modify the award and the injunction.

## I. CASE HISTORY

[¶ 2] The facts and procedural history of the present dispute may be summarized as follows: On September 29, 1999, Truman a real estate broker, filed a libel action against Browne claiming that Browne had sent letters to the Secretary of State, several real estate purchasers, and a bank falsely accusing her of improperly inducing Browne's elderly parents to grant an easement across their property. Truman sought compensatory and punitive damages as well as preliminary and permanent

---

* Wathen, C.J., participated in the initial conference but resigned before this opinion was adopted.

injunctions. The court (*Kravchuk, J.*) granted Truman's request for a preliminary injunction and restrained Browne from publishing "to any person or entity . . . any statements, allegations, letters, comments, demands or other communications whatsoever" regarding Truman or her brokerage agency.

[¶ 3] Browne was served with the complaint and summons on October 14, 1999. On October 28, she moved to dismiss the complaint. A hearing on Browne's motion to dismiss was held on December 21, 1999. Browne failed to appear at that hearing. The court denied Browne's motion to dismiss that day.

[¶ 4] An answer must be filed within twenty days after the service of the complaint and summons. M.R. Civ. P. 12(a). A motion such as Browne's motion to dismiss tolls the time for filing an answer. *Id.* However, if the court denies the motion, a defendant must answer the complaint "within 10 days after notice of the court's action." *Id.*

[¶ 5] Browne filed an answer to the complaint on January 10, 2000, twenty days after the denial of the motion to dismiss. In her answer she maintained that her statements were not libelous because they were true. The same day that Browne filed her answer, Truman filed a request for default for Browne's untimely answer, and the clerk of the Superior Court entered Browne's default.

[¶ 6] Browne moved to set aside the entry of default. The court (*Humphrey, J.*) denied the motion and ordered that a hearing on damages and the permanent injunction be scheduled.

[¶ 7] Browne later moved for relief from the preliminary injunction, but the court (*Perkins, A.R.J.*) denied the motion. In her memorandum in opposition to Browne's motion for relief, Truman noted that "there is no danger that the preliminary injunction now in place will extend indefinitely beyond the date of a final decision on the merits of this action." She also stated that Browne would have an adequate opportunity to prove her allegations at trial.

[¶ 8] After a hearing, the court (*Gorman, J.*) entered judgment on the default. It awarded Truman $18,703 in compensatory damages, including $8703 for attorney fees, and it granted her request for a permanent injunction. Browne moved for a new hearing on damages challenging, among other things, the award for attorney fees that had been included in the court's compensatory damage assessment. Browne argued that some of the fees claimed were attributable to services rendered prior to litigation. Browne also moved to amend the judgment. The court denied both motions, and Browne brought this appeal.

## II. JUDGMENT ON DEFAULT

■ [¶ 9] A court may set aside a default judgment for "good cause shown." M.R. Civ. P. 55(c). To establish "good cause," a party must show a good excuse for his or her untimeliness and a meritorious defense. *Boit v. Brookstone Company, Inc.,* 641 A.2d 864, 865 (Me.1994). We review a trial court's ruling on a motion to set aside a default for abuse of discretion and will vacate the judgment only "if the denial works a plain and unmistakable injustice against the defendant." *LaFosse v. Champagne,* 2000 ME 81, ¶ 10, 750 A.2d 1254, 1256.

■ [¶ 10] In the present case, Browne has presented an arguably meritorious defense. She alleges, in her answer, that the statements she published to third parties are true. Browne has not, however, established that the court exceeded the bounds of its discretion in determining that she

had not stated a good excuse for her untimely answer. Browne argues that she mistakenly thought that she had twenty days from the denial of her motion to dismiss in which to file her answer. However, the trial court could reasonably consider her claim in the context that Browne had recently filed a motion to dismiss that served to delay her answer and then had failed to appear at the scheduled hearing on the motion to dismiss. These actions suggested significant carelessness in her defense of the matter which the trial court could view as confirmed by her untimely answer.

■■ Although Browne is representing herself, we afford her no bending of the rules or other "special consideration." *See Dumont v. Fleet Bank of Maine,* 2000 ME 197, ¶ 13, 760 A.2d 1049, 1054. Rule 12(a) of the Maine Rules of Civil Procedure provides that "if the court denies the motion [in this case, the motion to dismiss] ... the responsive pleading shall be served within 10 days after notice of the court's action." M.R. Civ. P. 12(a). Browne's misunderstanding of this rule, taken in the context of her prior actions in this case, does not constitute a good excuse for her late answer. The court, therefore, did not exceed the bounds of its discretion by refusing to set aside the entry of default. Because entry of the default was proper, we need not address whether the preliminary injunction unduly limited Browne's capacity to develop evidence on liability issues.

### III. ATTORNEY FEES

■ [¶ 12] Browne argues that the court erred by awarding Truman $8703 in attorney fees as part of its award for compensatory damages. Browne did not directly challenge the court's authority to award attorney fees in the trial court.[1] However, because the award of attorney fees was objected to, we will consider the issue because it is purely legal, its resolution does not require the introduction of additional facts, its proper resolution is clear, and a failure to consider it may result in a miscarriage of justice. *See United States v. Krynicki,* 689 F.2d 289, 291–92 (1st Cir. 1982) (discussing factors relating to exercise of appellate court's discretion to consider issues not directly raised below). Whether a court is authorized to award attorney fees is a question of law that we review de novo. *Baker v. Manter,* 2001 ME 26, ¶ 12, 765 A.2d 583, 585.

■ [¶ 13] An award of attorney fees must be based on: (1) a contractual agreement between the parties; (2) a specific statutory authorization; or (3) the court's inherent authority to sanction serious misconduct in a judicial proceeding. *Id.,* ¶ 17, 765 A.2d at 586. In the present case, Truman did not plead or prove that she was entitled to attorney fees under any statutory provision, nor did she attempt to establish that there had been any contract authorizing award of attorney fees. The record does not indicate that Browne abused the litigation process in any way. The court, therefore, was without authority to award Truman her attorney fees.

[¶ 14] Truman argues that the default judgment contains only an award of $18,703 in compensatory damages, with no separate award of attorney fees. She maintains that nothing in the record explains how the court determined the

---

1. Browne did challenge a portion of the award of attorney fees in her motion for a new hearing on damages. There she maintained that the award was improper because a portion of the fees claimed represented fees incurred prior to litigation. However, she did not argue, as she does here, that the court was without authority to award any attorney fees.

amount of compensatory damages. However, the record demonstrates that $8703 of the award for compensatory damages represents Truman's attorney fees. Truman herself acknowledged, in her memorandum objecting to Browne's motion for new hearing on damages, that she represented to the court that she had incurred $8703 in attorney fees, and she asserted that the court was correct to award attorney fees. Truman cannot now assert that the court did not award attorney fees. The compensatory damages award must be reduced by the amount intended to compensate for attorney fees.

## IV. PERMANENT INJUNCTION

■ [¶ 15] Browne also challenges the trial court's authority to permanently enjoin her from publishing certain statements to others. The injunction permanently restrains Browne from "publication by any medium, ... to any person or entity, of any statements, allegations, letters, comments, demands or other communications whatsoever" regarding Truman or her real estate agency with respect to the present real estate dispute. This language is over broad. Any person has a qualified privilege to make statements to law enforcement or regulatory agencies regarding the conduct of others, where the person making the statement believes in good faith that the statement is true and indicates that a statutory standard administered by the agency may have been violated. *See Baker v. Charles,* 919 F.Supp. 41, 44 (D.Me.1996); *Packard v. Central Maine Power Co.,* 477 A.2d 264, 267–68 (Me.1984); RESTATEMENT (SECOND) OF TORTS § 598 (1976).[2] Only extraordinary circumstances could justify prior restraint on such communications to proper authorities, and such circumstances are not indicated here.

The entry is:

Judgment vacated in part. Remanded to the Superior Court with instructions to reduce the compensatory damages award to $10,000 and to modify the permanent injunction consistent with this opinion. In all other respects, the judgment is affirmed.

DANA, J., with whom CALKINS, J., joins, dissenting.

[¶ 16] I respectfully dissent. The Court has not considered the particular circumstances of Browne's late answer in relation to the legal precedent that default judgments are appropriate only when there is unconscionable delay.

[¶ 17] We have held that when a defendant is tardy in filing an answer and the plaintiff moves for the entry of a default, the trial court must balance

> the importance of the parties being diligent in the trial of cases against the general disfavor with which the law views judgments by default. As has been said: [S]ubstantial rights should not be determined by default if that procedure can reasonably be avoided and no substantial prejudice has resulted.

*Millett v. Dumais,* 365 A.2d 1038, 1040 (Me.1976) (quoting Field, McKusick & Wroth, *Maine Civil Practice* § 55.4 at 21–22 (2d ed. 1970 & Supp.1981) (internal

---

**2.** The Restatement provides:

> An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that
> (a) there is information that affects a sufficiently important public interest, and
> (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true.

RESTATEMENT (SECOND) OF TORTS § 598.

quotation marks omitted)). In *Millett* the Court decided although "admittedly the defendant was tardy in filing his answer," the trial court properly denied the motion for a default judgment. *Id.* at 1039. The Court recognized that "there are circumstances under which default judgments become appropriate, such as cases in which the action is not contested, or where the record indicates *unconscionable delay or contumacious conduct.*" *Id.* at 1040 (emphasis added).

[¶ 18] We have defined what "good cause" means on a case by case basis. In *Thomas v. Thompson,* 653 A.2d 417, 419 (Me.1995), the defendant forwarded a complaint to the insurance representative who answered late, because he had been on vacation and returned to over 15 new suits demanding attention. *Id.* The trial court denied the motion to set aside the default; we vacated that decision. *Id.* at 421. We highlighted that "[t]here is a strong preference in our law for deciding cases on the merits." *Id.* at 420. Furthermore,

> [c]onsistent with this preference, we note that under Fed.R.Civ.P. 55(c), which is identical to M.R. Civ. P. 55(c), motions to set aside a default have been granted in cases when no *gross neglect* was involved in the late filing, the non-defaulting party will not be substantially prejudiced by reopening the case, and a meritorious defense exists.

*Id.* (emphasis added). Here, there was "good cause" to set aside the default because the conduct of both the insured and insurer revealed an honest effort to comply with filing rules. *See id.*

[¶ 19] We will assess the validity of an excuse in the "particular circumstances" of a case. *See, e.g., Design Build of Maine v. Paul,* 601 A.2d 1089, 1091 (Me.1992). There is a difference between a "failure to respond at all to the initial complaint," and "a failure to comply with the rules governing pretrial procedures," the latter being less egregious, *at least in the context of the particular facts of the case. Id.* In *Design Build* the plaintiff did not answer an amended counterclaim, the defendant moved for a default, and the court denied the plaintiff's ensuing motion to set aside the default. *Id.* Because the "failure to respond arose solely from confusion surrounding the entrance of new counsel shortly after the filing of the amended counterclaim," and the circumstances of the case did not reflect either " 'an unresponsive party's needless protraction of litigation' or a case 'fraught with delay ... caused by [a party],' " the court had erred in denying the motion to set aside the default. *Id.* (quoting *Porges v. Reid,* 423 A.2d 542, 544 (Me.1980)).

[¶ 20] Although Browne failed to respond to the complaint in a timely fashion (i.e., within ten days), she did not do so to "protract" the litigation, or cause undue delay; this is evidenced by her filing the answer on the schedule from which she had been operating, that is the typical twenty days to answer a complaint prescribed by Rule 12. Whereas Rule 12 dictates that service of a motion will alter the twenty day time period to ten days when the court denies the motion, Browne's lack of knowledge of this time change is not *gross* neglect.

[¶ 21] We have firmly recognized that time limits set by the rules of civil procedure, and by the trial court in its orders, must be followed. However, in the context of an entry of a default, which declares the defendant's liability without the truth-seeking function of a trial, though necessary to conclude stagnant cases, *narrowly* missing a time deadline should not automatically result in a default judgment. Ignoring a time deadline altogether justifies the entry of a default. *See Interstate Food Processing Corp. v. Pellerito Foods,*

*Inc.*, 622 A.2d 1189 (Me.1993); *Erskine v. Comm'r of Corr.*, 682 A.2d 681, 683 (Me. 1996);[3] *Mockus v. Melanson*, 615 A.2d 245 (Me.1992); *see, e.g., Cutillo v. Gerstel*, 477 A.2d 750, 752 (Me.1984) (affirming the trial court's denial of a motion to set aside the entry of a default, because the appellant had *"no basis* for assuming that the suit against him came to a standstill" when his attorney filed a motion to withdraw). Browne did not completely ignore a deadline. *Compare Firth v. City of Rockland,* 580 A.2d 694, 696 (Me.1990) (affirming the trial court's decision that the defendants' explanation for a late answer, that their insurance company failed for over a year to respond to the plaintiff's notice of claim, was "no excuse").

[¶ 22] Courts "exist to do justice, and are properly reluctant to lend their processes to the enforcement of an unjust judgment." Field, McKusick & Wroth § 55.7 at 24. Because Browne presented a meritorious defense as required by Rule 55(c), *see Hart v. Terry L. Hopkins, Inc.,* 588 A.2d 1187 (Me.1991), did not cause an unconscionable delay with the late filing of the answer, and because the rights of the plaintiff were not substantially affected by the ten day delay, I would hold that the trial court exceeded the bounds of its discretion in denying Browne's motion to set aside the entry of default.

---

**3.** Because the assistant attorney general, defending the State, did not respond to court ordered discovery deadlines, the court entered a default judgment; however, the court granted the defendant's motion for relief because the assistant attorney general's alcohol-ism and lying to supervisors about the case constituted a "good cause." *Erskine,* 682 A.2d at 684. We affirmed because the trial court properly applied the "good cause" standard.