STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        DOCKET NO: 19-CV-434

BRIDGEPOINT CAPITAL, LLC,          )
                                   )
                Plaintiff,         )
                                   )
        v.                         )                    ORDER
                                   )
DANA CARVELL, et al.,              )
                                   )
                Defendant          )


Before the court is Plaintiff's Request for Default against Defendant G. Charles Shumway

and Defendant Shumway's Motion for Late Entry. Shumway's previous Motion to Dismiss was

denied by this court on December 7, 2020. Pursuant to M. R. Civ. P. 12(a), Shumway had ten (10)

days from December 7 in which to file an Answer. Shumway's Answer was not filed until

December 31, 2020 (the court is aware that Shumway's Answer was rejected by the court clerk on

December 30, 2020). Shumway made no attempt to file an Answer within the time permitted and

is therefore in default. However, the court received Shumway's Answer prior to the Plaintiff's

Request for Default. In the interest of judicial economy, the court ordered that Shumway provide

the court with written explanation as to why Default should not be entered. Shumway had seven

(7) days from January 22, 2021 to file his explanation. The court held that it would only consider

such evidence as would be relevant pursuant to M. R. Civ. P. 55(c). *See also Truman v. Browne*,

2001 ME 182, ¶ 9, 788 A.2d 168 (requiring a party to show both a good excuse and a meritorious

defense to set aside default under Rule 55(c)).

Shumway did not file his response until February 3, 2021, outside the time permitted by

the court's Procedural Order. Shumway's late response states that he was mistaken on when he

was required to file an Answer because he followed the wrong time requirements of Rule 12.

Page 1 of 2

Nevertheless, Shumway argues that default should not enter because he has been actively engaged in this litigation for more than a year.

Procedural requirements appear to have been at issue for Shumway throughout this case. The Plaintiff alleged in its Opposition to Shumway's original Motion to Dismiss that Shumway failed to properly serve the Motion on the Plaintiff. The court is also aware that there were various complications between the court clerk and Shumway regarding the filing of his Motion to Dismiss and Answer. Shumway's late filing here cannot be viewed in isolation. Under the totality of the circumstances presented, the court cannot hold that Mr. Shumway's mistaken reliance on Rule 12 rises to the level of good excuse required under M.R. Civ. P. 55(c).

The entry is:

Defendant's Motion for Late Entry is DENIED.

Plaintiff's Motion for Default is GRANTED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __4/22/2021__

_____
MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 4/26/2021

Page 2 of 2

BRIDGEPOINT CAPITAL, LLC,            )
                                     )
            Plaintiff,               )
                                     )
     v.                              )    ORDER ON DEFENDANT SHUMWAY'S
                                     )         MOTION TO DISMISS
DANA CARVELL, et al.,                )
                                     )
            Defendant                )

REC'D CUMB CLERKS OF
DEC 7 '20 PM 1:23

Before the Court is Defendant Shumway's Motion to Dismiss counts XII and XIII of Bridgepoint's Amended Complaint. After due consideration, Shumway's Motion is denied.

## I. Factual Background

Bridgepoint Capital LLC, ("Bridgepoint") instituted this twenty-one-count lawsuit against nine separate Defendants on January 24, 2020. Bridgepoint alleges two counts against Defendant G. Charles Shumway, ('Shumway"): (1) fraudulent transfer pursuant to 14 M.R.S. §§ 3571-3582; and (2) conversion by collusion. (Pl's. Amend. Compl. ¶¶ 103-108.) Shumway submitted this Motion to Dismiss in response and included an accompanying affidavit in which Shumway both contests and adds to the facts alleged in the Complaint. The facts relevant to Shumway's Motion are taken from Bridgepoint's Amended Complaint and are viewed in the light most favorable to it.

Bridgepoint seeks to recover money it loaned to Defendant, Dana Carvell ("Carvell"). (Pl's. Amend. Compl. *generally*). Carvell is the sole owner of Vacuum Village LLC, which has also been named as a Defendant in this lawsuit. (Pl's. Amend. Compl. ¶¶ 2, 3.) In 2018, Bridgepoint and Carvell formed an oral contract wherein Bridgepoint agreed to loan $140,000 to Vacuum Village. (Pl's. Compl. ¶ 13.) To secure the loan,

For Plaintiff: Bob Mittel, Esq. and Scott Dolan, Esq.

Resolved parties:
Stewart Title: Andrew Sparks, Esq.
Bay Area Title & Susan Knedler: Zachary Greenfield, Esq.
New England Title & Amy Gibson: David Sam Anderson, Esq.

Pro se Parties:
Dana Carvell (not answered or appeared)
Vacuum Village (defaulted on 1/2/20)
G Charles Shumway, III

For Def John Cimino: Sean Turley, Esq.

Carvell agreed that Vacuum Village would execute a promissory note and mortgage on real property located at 38 Garfield in Saco, Maine, ("Garfield property") in favor of Bridgepoint. (*Id.*) At the time of the contract, the Garfield property was owned by Carvell personally. (*Id.*) Therefore, the contract was expressly contingent upon Carvell transferring title of the Garfield property to Vacuum Village. (*Id.*) Vacuum Village executed the promissory note and mortgage as agreed and Carvell personally guaranteed payment on the note. (Pl's. Amend. Compl. ¶¶ 13, 15.) However, title to the Garfield property was never transferred to Vacuum Village. (*Id.*)

The purpose of the $140,000 loan was for Vacuum Village to improve the Garfield property and then sell it for profit (Pl's. Amend. Compl. ¶ 14.) Prior to sale, Carvell hired Co-Defendant, John Cimino, ("Cimino") to replace a subsurface wastewater disposal system at the Garfield property. (Pl's. Amend. Compl. ¶¶ 20, 22.) Once completed, Carvell sold the Garfield property to a third party for approximately $334,000 and paid Cimino $178,000 with a portion of the proceeds. (Pl's Amend. Compl. ¶ 40(d).) The relevance of Carvell's payment to Cimino is explained *infra*.

Bridgepoint became aware that the Garfield property was contracted for sale approximately three months prior to the sale's closing. (Pl's. Amend. Compl. ¶ 19.) During this time, Bridgepoint contacted Co-Defendant, Bay Area Title Services, ("Bay Area") multiple times to inquire about the pending sale. (Pl's. Amend. Compl. ¶¶ 29, 31.) Through this contact, Bridgepoint discovered that Carvell never transferred title of the Garfield property to Vacuum Village and thus the mortgage held by Bridgepoint was "worthless." (Pl's. Amend. Compl. ¶¶ 29-30.) However, Bay Area acknowledged that Carvell's personal guarantee to Bridgepoint meant Carvell was still obligated to repay the loan amount. (Pl's. Amend. Compl. ¶ 31.) Bay Area agreed to contact Bridgepoint prior to closing to inform Bridgepoint of the actual closing date and determine the payoff

amount due. (Pl's. Amend. Compl. ¶ 31.) Bridgepoint also spoke with Carvell during this time, wherein Carvell indicated that he would pay his obligation to Bridgepoint out of the proceeds of the sale. (Pl's. Amend. Compl. ¶ 30.) Because of this, Bridgepoint made no attempt to stall the sale. (Pl's. Amend. Compl. ¶ 33.) However, Bridgepoint was not notified of the closing date and found the property had been sold after a Bridgepoint employee drove past the Garfield property and saw that the subsequent buyers had moved in. (Pl's. Amend. Compl. ¶¶ 39, 45.)

**A. Shumway**

The Defendant here, Shumway, is an attorney who has represented Carvell and Vaccum Village since before the Garfield property sale. (Pl's. Amend. Compl. ¶ 24.) Shumway also represented Co-Defendant Cimino in a foreclosure action against Cimino's property located at 93 Longwood Dr. in Portland, Maine. (Pl's. Amend. Compl. ¶ 26.) Importantly, Carvell opened a new banking account at Bangor Savings Bank using Cimimo's encumbered Longwood property address and deposited the Garfield property sale proceeds into that account. (Pl's. Amend. Compl. ¶¶ 40(a)-(b).) Along with the payment made to Cimino mentioned above, Carvell also paid Shumway $10,000 out of the same Bangor Savings Bank account. (Pl's. Amend. Compl. ¶ 40(e).) In total, Carvell received $285,793.34 from the Garfield property sale, which breaks down to be: $178,000 for Cimino; $10,000 for Shumway; with $97,793.34 left for Carvell. (Pl's. Amend. Compl. ¶ 37.) All of these actions are alleged to have occurred within seven days after closing on the Garfield property. (Pl's. Amend. Compl. ¶ 40.)

The foreclosure action against Cimino's Longwood property was ongoing when Camino received the $178,000 check from Carvell. (Pl's. Amend. Compl. ¶ 41.) However, the foreclosure action was subsequently waived by the mortgagee after Cimino resolved his default under the note and mortgage that encumbered the Longwood property. (Pl's.

Amend. Compl. ¶ 42.) Bridgepoint alleges that Cimino paid his outstanding debt encumbering the Longwood property with the $178,000 he received from Carvell. (Pl's. Amend. Compl. ¶ 43.) Although Bridgepoint does not allege that Shumway was directly involved in the final resolution of the Longwood mortgage, Bridgepoint does allege that Shumway was at the Garfield property closing, and that the proceeds of that sale were first issued to Shumway so that the Shumway could then distribute the funds to Carvell. (Pl's. Amend. Compl. ¶¶ 104(a)-(b).) Bridgepoint further alleges that Shumway knew Bridgepoint was entitled to a portion of the Garfield property proceeds by virtue of Carvell's guaranty on the $140,000 loan, and that Carvell's payments to Shumway and Cimino would render Carvell insolvent. (Pl's. Amend. Compl. ¶¶ 104(c)-(d), 105.) The note is now in default and Carvell cannot be located. (Pl's. Amend. Compl. ¶¶ 2, 50.)

## II. Legal Standard

A motion to dismiss pursuant to M. R. Civ. P. 12(b)(6) "tests the legal sufficiency of the allegations in the complaint, not the sufficiency of the evidence the plaintiffs are able to present." *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993)(internal citations omitted). The court shall "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id*. (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id*.

## III. Discussion

### A. Conversion to Summary Judgment

At the outset, the Court must decide whether Shumway's Motion to Dismiss, and attached affidavit, convert this Motion to one of summary judgment. If "matters outside the pleadings are presented to and not excluded by the court," Rule 12(c) requires that: "[t]he motion shall be treated as one for summary judgment." M. R. Civ. P. 12(c). However, if a motion to dismiss is converted to a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent" to summary judgment. *See Id.; see also Beaucage v. City of Rockland*, 2000 ME 184, ¶ 5, 760 A.2d 1054.

The Court is unwilling to convert Shumway's Motion to one of summary judgment. Bridgepoint has not been afforded the opportunity to present all material pertinent to summary judgment here and conversion of this Motion to summary judgment is therefore inappropriate. The Court will proceed pursuant to Rule 12(b)(6) and determine whether the Complaint alone, if true, alleges facts upon which Bridgepoint might be able to recover pursuant to some legal theory.

## B. Fraudulent Transfer

"A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time and the insider had reasonable cause to believe that the debtor was insolvent." 14 M.R.S. § 3576(2). If the debtor is an individual, an "insider: includes: (1) a relative of the debtor or a general partner of the debtor; (2) a partnership in which the debtor is a general partner; (3) a general partner in a partnership; or (4) a corporation of which the debtor is a director, officer or person in control. 14 M.R.S. §§ 3572(7)(A)(1)-(4). However, an insider may also include "an affiliate or an insider of an affiliate as if the affiliate were the debtor; and a managing agent of the debtor." 14 M.R.S. §§ 3572(7)(D)-(E).

Here, it is clear that Shumway is not an "insider" as it relates to an individual debtor because Bridgepoint has not alleged that Shumway is a relative or general partner of Carvell. However, Bridgepoint does allege that Shumway served as Carvell and Vacuum Village's attorney. Because it is alleged that the proceeds of the Garfield property sale were distributed to Carvell through Shumway, and that Shumway received $10,000 of those proceeds, the Court cannot hold, at this stage, that Shumway was not an "insider" through affiliation or agency. Additionally, Bridgepoint properly alleges that Shumway knew that Bridgepoint was entitled to a portion of the proceeds and Carvell's distribution of the money to Shumway and Cimino would render Carvell insolvent. Considering these allegations as true, Bridgepoint has properly alleged a claim of fraudulent transfer by an insider and dismissal is inappropriate at this stage. As such, Shumway's Motion to Dismiss is denied in regard to Count XII.

## C. Conversion by Collusion

"The gist of conversion is the invasion of a party's possession or right to possession at the time of the alleged conversion." *General Motors Acceptance Corp. v. Anacone*, 160 Me 53, 82, 197 A.2d 506, 524 (1964). The necessary elements of conversion are: (1) the person claiming conversion had a property interest in the property converted; (2) the person had the right to possess the property at the time of the alleged conversion; and (3) the person holding the right of possession made a demand for return of the property and that demand was denied by the property holder. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798.

Here, Bridgepoint has alleged facts under which, if proven, could entitle it to relief on its claim of conversion against Shumway. Bridgepoint alleges that Shumway was present for the closing of the Garfield property and that the funds from the sale were first distributed to Shumway and then subsequently distributed to Carvell; all while

Shumway knew that Bridgepoint had a right to a portion of those proceeds. In viewing these facts as true and in the light most favorable to Bridgepoint, this Court cannot say that "it appears beyond a doubt that [Bridgepoint] is not entitled to relief under any set of facts" that might be proven in support of its claim for conversion.[1] *Bonney*, 2011 ME 46, ¶ 16, 17 A.3d 123 (citations omitted). Therefore, dismissal is inappropriate under the circumstances and Shumway's Motion is denied in regards to Count XIII.

**Conclusion**

Bridgepoint's Complaint properly states a claim for both fraudulent transfer and conversion against Shumway. Namely, Bridgepoint alleges that Shumway was present at the closing of the Garfield property; distributed the proceeds of the sale to Carvell; received a portion of the proceeds; represented Co-Defendant Cimino in a foreclosure action that was resolved by a separate portion of the proceeds; all with the knowledge that these actions would render Carvell insolvent as to the debt Carvell personally owed to Bridgepoint. If proven, these actions could entitle Bridgepoint to recover from Shumway on both causes of action. As such, dismissal of Counts XII and XIII are inappropriate at this stage

Shumway's Motion to Dismiss is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __12/7/2020__

MaryGay Kennedy, Justice
Maine Superior Court

---

[1] This is true regardless of whether Bridgepoint had a valid security interest in the Garfield property itself because Bridgepoint has properly alleged that Shumway knew Bridgepoint had a right to a portion of those proceeds by virtue of Carvell's personal guarantee to repay the Bridgepoint loan.