Kathleen A. MAYNARD, et al.

v.

COMMISSIONER OF CORRECTIONS, et al.

Supreme Judicial Court of Maine.

Argued April 1, 1996.
Decided Aug. 5, 1996.

L. Breckinridge Hayes–Snow (orally), Mary E. Maloney, Cooper, Deans & Cargill, P.A., North Conway, New Hampshire, for Plaintiffs.

Andrew Ketterer, Attorney General, Thomas D. Warren (orally), Assistant Attorney General, Augusta, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and RUDMAN, JJ.

CLIFFORD, Justice.

This is an action arising out of the murder of Jessica Lea Briggs who, while a resident of the Maine Youth Center, was killed

after she left its premises without permission.[1] The plaintiffs, Kathleen A. Maynard and Howard L. Briggs, Jessica's parents, appeal from the entry of an order in the Superior Court (Cumberland County, *Lipez, J.*) granting defendants[2] relief from a default judgment, and from the summary judgment entered (*Bradford, J.*) in favor of the defendants. Contrary to the plaintiffs' contentions that the court abused its discretion in granting the motion for relief and erred in entering a summary judgment, we find no abuse of discretion or error, and we affirm the judgments.

Maynard and Briggs brought the current action as administrators of Jessica's estate. The plaintiffs seek a declaratory judgment that the State had insurance coverage for the claims they brought in a separate complaint,[3] and thus waived its sovereign immunity pursuant to 14 M.R.S.A. § 8116 (Supp.1995).

The defendants in this matter initially were represented by former Assistant Attorney General Terrance J. Brennan. Maynard and Briggs served Brennan with a request for the production of documents and interrogatories, M.R.Civ.P. 33, 34, seeking information regarding insurance coverage for state agencies. The plaintiffs filed a motion to compel discovery, M.R.Civ.P. 37(a)(2), when Brennan did not respond, and the court ordered immediate compliance and the payment of attorney fees, M.R.Civ.P. 37(b)(2). Brennan still failed to respond and, following further noncompliance on Brennan's part, the court (*Brennan, J.*) entered an order authorizing the eventual entry of a default judgment against the defendants should Brennan again fail to provide discovery. Brennan failed to comply with this order and, after he admitted to the court his complete failure to comply with its previous orders and offered no excuse for the failure, the court (*Lipez, J.*) entered a judgment against all the defendants, M.R.Civ.P. 55(b)(2). In addition to ordering attorney fees and costs,[4] the judgment incorporated a stipulation of facts proposed by Maynard.[5]

The defendants subsequently moved for relief from the order and default judgment pursuant to M.R.Civ.P. 55(c), 60(b)(1), 60(b)(4), and 60(b)(6). The facts underlying the motion were based on the affidavits of Brennan's supervisor at the Department of the Attorney General, the defendants, and Brennan. Among the facts alleged in the affidavits are: (1) that Brennan is an alcoholic; (2) that after a nine or ten-year period during which he abstained from alcohol, Brennan began drinking again in 1991 and was unable, in many cases, to perform his job; (3) that Brennan's alcoholism resulted in his failure to comply with the discovery obligations of this case, and ultimately led to the entry of the order and default judgment; (4) that Brennan never revealed to his supervisors or colleagues at the Department of the Attorney General, or to the defendants he represented, that a default judgment had been entered against the defendants.

The Department of the Attorney General apparently first learned of Brennan's alcoholism in late October 1992, some time after the entry of the default judgment. Brennan did not reveal the fact of the default judgment until after he left the Department, some sev-

---

1. Anthony Sanborn, Jr. subsequently was convicted of Jessica's murder. *State v. Sanborn*, 644 A.2d 475 (Me.1994).

2. The defendants in this case are the State of Maine, the Commissioner of Corrections, the Superintendent of the Maine Youth Center, and the Director of the State's Risk Management Division, in their official capacities. We review the claims as claims against the State for purposes of sovereign immunity. *See Drake v. Smith*, 390 A.2d 541, 543 (Me.1978).

3. A separate action for damages, *Maynard v. Wyse*, Docket No. CV–91–704, was brought in the Superior Court by Maynard and Briggs in May 1991. That action, stayed pending the outcome of the present declaratory judgment action, seeks damages against the State and other individuals for violations of federal and state constitutional rights, liability pursuant to 42 U.S.C. § 1983, negligence, and wrongful death.

4. The plaintiffs subsequently requested $1,850 in attorney fees. Despite the court's order providing him ten days to object, Brennan failed to raise an objection to the request. The State since has paid the fees.

5. The stipulation of facts stated that the defendants were covered by insurance provided by the State and that sovereign immunity had been waived.

en months after its entry. Brennan was terminated from employment at the Attorney General's office effective July 2, 1993. On December 26, 1995, Brennan was disbarred from the practice of law. *Board of Overseers of the Bar v. Brennan*, BAR–95–6 (Dec. 26, 1995) *(Dana, J.).*[6]

The court granted the relief requested by the defendants and set aside its prior order and default judgment. In doing so, the court relied on our holding in *Drake v. Smith*, 390 A.2d 541 (Me.1978), in which we stated that the State's sovereign immunity cannot "be deemed forfeited by procedural defaults." *Id.* at 543. The court found in the alternative that the State had established excusable neglect within the meaning of M.R.Civ.P. 60(b)(1).

The defendants ultimately provided the plaintiffs with the discovery materials they previously had requested. The defendants subsequently moved for a summary judgment based on the contention that the State had no commercial insurance covering the claims in this action that could have constituted a waiver of its sovereign immunity pursuant to the Maine Tort Claims Act, 14 M.R.S.A. § 8101–8118 (1980 & Supp.1995), and that Maine's self-insurance program expressly provides that it does not cover "claims for which there would otherwise be immunity under the Maine Tort Claims Act, under any other statute, or under the common law." The court *(Bradford, J.)* agreed with those contentions and entered a summary judgment in favor of the defendants. This appeal followed.

## I.

◼ We review a court's decision to grant a motion for relief from a default judgment for an abuse of discretion. *Theriault v. Gauthier*, 634 A.2d 1255, 1256 (Me.1993). In

light of the trial justice's familiarity with the case and opportunity to evaluate the credibility and good faith of the parties, considerable deference is accorded a trial judge's disposition of a motion to set aside a default judgment. 2 Field, McKusick & Wroth, *Maine Civil Practice* § 55.7 (2d ed. 1970 & Supp. 1981).

◼ Although the circumstances of this case reflect "an unresponsive party's needless protraction of litigation," as well as a case "fraught with delay ... caused by the Defendants," *Porges v. Reid*, 423 A.2d 542, 545 (Me.1980), the trial court nonetheless · acted well within its discretion in setting aside the default judgment based on the authority of *Drake.*[7] We held in *Drake* that a court may not enter a judgment against the State because of a waiver of its sovereign immunity based on a procedural default. *Drake*, 390 A.2d at 546; *see also Rutherford v. City of Portland*, 494 A.2d 673, 675 (Me. 1985) (city did not waive its sovereign immunity by failing to plead the defense in its answer or at trial); *Turner v. Collins*, 390 A.2d 537, 540 (Me.1978) (bar of sovereign immunity as to excess beyond recovery authorized in legislative resolve not waived by counsel's entry of general appearance or lost through procedural default resulting from counsel's failure to affirmatively plead sovereign immunity); *cf. Bell v. Town of Wells*, 510 A.2d 509, 515 (Me.1986) (Declaratory Judgments Act alone insufficient to override sovereign immunity when doctrine properly applied).

In *Drake*, the plaintiff argued that because the issue of the State's sovereign immunity had not been raised by the defendant until after a report by a referee had been filed and was pending in court, sovereign immunity had been waived. *Drake*, 390 A.2d at 542–43. Rejecting this argument, we held that when

---

6. In its order disbarring him from the practice of law, the Court found that Brennan is an alcoholic; that by the fall of 1991, his drinking had become such a serious problem that he often was unable to perform his job; that Brennan lied to his superiors at the Attorney General's office about the status of the case; and that, due to his actions, the State "was exposed to substantial liability in spite of the existence of sovereign immunity and the absence of any insurance" in

the current matter. *Board of Overseers of the Bar v. Brennan*, BAR–95–6 (Dec. 26, 1995) *(Dana, J.).*

7. The court set aside the default judgment based on its conclusion that it was void *ab initio*. In particular, the court stated that "as discussed in *Drake v. Smith* ... the order that I entered back in October based upon all these procedural defaults, is simply void ... it was ... just not good as a matter of law, ..."

the Legislature has failed to enact a general law plainly conferring the State's consent to be sued as to a class of cases, the Legislature must deal specifically with a particular action sought to be brought against the State and give its plainly stated consent that the State may be sued in that action. *Drake*, 390 A.2d at 545. We noted the "large majority view" that the sovereign's immunity from suit cannot be waived, in the absence of specific legislative authorization, through the imposition of procedural requirements or be deemed forfeited by procedural defaults. *Drake*, 390 A.2d at 543; *see Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974) (state's immunity from suit in federal court cannot be waived by its mere participation in a federally funded program).[8] Accordingly, the default judgment properly was set aside.

### II.

■ The plaintiffs also contend that a summary judgment was inappropriate because the documents providing insurance coverage for the State are sufficiently ambiguous to raise a genuine issue of material fact and because the court misapplied 14 M.R.S.A. § 8116 and improperly placed the burden on them. We review the entry of a summary judgment for errors of law, viewing the evidence in a light most favorable to the party against whom the judgment was entered. *Lynch v. Ouellette*, 670 A.2d 948, 949 (Me.1996). For a party to be entitled to a summary judgment, it must be determined that there are no issues of material fact in dispute and that the prevailing party is entitled to a judgment as a matter of law. *Id.*

■ Pursuant to the Maine Tort Claims Act, governmental entities are immune from suit, subject to specific, limited exceptions. 14 M.R.S.A. § 8103(1); *Webb v. Haas*, 665

A.2d 1005, 1011 (Me.1995). In addition to the exceptions enumerated in section 8104–A of the Act, pursuant to section 8116, a governmental entity may procure liability insurance, but "[i]f the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage." It is well settled that statutory exceptions to the doctrine of sovereign immunity are to be strictly construed. *Stretton v. City of Lewiston*, 588 A.2d 739, 740 (Me.1991).

■ It is undisputed that the State and, more specifically, the Department of Corrections had no commercial insurance policies in effect at any time relevant to the claims in this action. Although Risk Management[9] did offer, and the Department of Corrections did accept, what is referred to as a form of self-insurance coverage, the memorandum describing the policy expressly stated that the coverage excludes "any claims for which there would otherwise be immunity under the Maine Tort Claims Act, under any other statute, or under the common law." In 1992, Risk Management purchased excess insurance coverage to safeguard its self-insurance fund. That coverage also provided that the insurance would not cover those areas where immunity under the Maine Tort Claims Act existed. *See also* 5 M.R.S.A. § 1737(7) (Pamph.1995) (reserve fund administered by Risk Management does not expand State's liability under Maine Tort Claims Act). The language of section 8116 itself is dispositive of Maynard's contention that the excess insurance waived the defendants' sovereign immunity. The section provides that "[r]eserve funds, ... maintained by a governmental entity, ... to meet obligations imposed by this Act shall not increase the limits of liabili-

---

8. Although the trial court based its ruling on *Drake*, it also found that the defendants had met the excusable neglect standard of M.R.Civ.P. 60(b) by a showing of Brennan's alcoholism. Because we affirm the trial court's ruling based on the authority of *Drake*, however, we do not address the issue whether alcoholism on the part of a party's attorney may form the basis for a finding of excusable neglect.

9. Risk Management, a division of the Department of Administrative and Financial Services' Bureau of General Services, administers the State's policy on insurance management. 5 M.R.S.A. § 1725–A (Pamph.1995). The division's director is empowered to collect monies from various state agencies in order to maintain a reserve self-insurance fund for indemnification use in claims against the State. 5 M.R.S.A. §§ 1728–A, 1731 (Pamph.1995).

ty imposed by section 8105." 14 M.R.S.A. § 8116.

In *Webb*, we held in part that the State's purchase of liability insurance policies did not amount to a waiver of its governmental immunity in a suit based on the alleged misconduct of a police officer. *Webb*, 665 A.2d at 1011–12. As with the instant case, one of the policies in question in *Webb* contained an express exception excluding coverage for any claim for which the insured had immunity pursuant to the Maine Tort Claims Act. *Id.* at 1011. As in *Webb*, the express terms of the self-insurance coverage provided to the Department of Corrections in this case preserved the State's immunity. The trial court thus did not err in deciding that there is no genuine issue of fact in dispute and that sovereign immunity is preserved.

Finally, the plaintiffs' contentions that the court improperly placed the burden of proof on her or that it misapplied the language of section 8116 are without merit.

The entry is:

Judgments affirmed.

All concurring.