1997 ME 157

**Anita DOUCETTE**

v.

**CITY OF LEWISTON et al.**

Supreme Judicial Court of Maine.

Argued May 12, 1997.

Decided July 21, 1997.

Jennifer Nichols Ferguson (orally), Fales & Fales, P.A., Lewiston, for plaintiff.

Edward R. Benjamin, Jr. (orally), Preti, Flaherty, Beliveau, Pachios, LLC, Portland, for defendant City of Lewiston.

Martha C. Gaythwaite (orally), Friedman & Babcock, Portland, for defendant Terry Thomas.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1.] Anita Doucette appeals from the summary judgment entered in the Superior Court (Androscoggin County, *Alexander, J.*) in favor of the defendants, the City of Lewiston and Terry Thomas, a dispatcher with the Lewiston Police Department. Doucette's complaint alleges Thomas failed to follow standard procedures in her capacity as a police dispatcher, which resulted in the death of John Doucette, Anita's husband. She argues the court erred by finding that Thomas was entitled to discretionary function immunity, and in finding that the City had not waived immunity by participating in the Maine Municipal Association Property & Casualty Pool. We affirm the judgment.

[¶ 2.] In the early morning hours of November 20, 1993, Lucien Doucette, John's father, called the Lewiston police and reported the following information to Thomas: John had taken a car belonging to his uncle; he was depressed because he had recently undergone a colostomy; he was "full of" prescribed medication; neither Lucien nor John's wife, Anita, knew where John had gone; and the car had an unloaded rifle in the trunk. Thomas ran a check on the vehicle identification number and the license plate number Lucien had given to her, but neither number appeared to be accurate. Lucien asked to have John picked up and "put ... in a detox or something like that," but Thomas told him the police could not do that unless John volunteered to go or was arrested. Lucien noted that the car did not belong to John, but he also made it clear that the owner of the car did not wish to press theft charges. The conversation was thus concluded and Thomas took no further action. In particular, she did not enter information about John or the vehicle into the National Crime Information Center (NCIC) computer network.

[¶ 3.] Later that same day, John was involved in a traffic accident in Wakefield, New Hampshire, and he encountered Officer Timothy Brackett of the Wakefield Police Department. Brackett thought John looked ill and sent him to a nearby motel to rest. Brackett also ran a check on John's driver's license, which included a check of the NCIC database. The check revealed nothing. The next day, November 21, 1993, John was found dead, having committed suicide.

[¶ 4.] Anita Doucette alleges Thomas was negligent in failing to elicit information from Lucien regarding John's potential for suicide and by failing to send out a missing persons report over the NCIC. She alleges that if Thomas had properly entered the information into the NCIC, Officer Brackett would have been alerted to the nature of John's situation "in time to take appropriate actions which would have resulted in preventing [John's] death by suicide." She also alleges that the City of Lewiston is vicariously liable for Thomas's negligence, and is independently liable on a theory of negligent supervision.

I.

[¶ 5.] The court found that Thomas was entitled to discretionary function immunity pursuant to 14 M.R.S.A. § 8111 (Supp.1996), which provides that employees of governmental entities "shall be absolutely immune from personal civil liability" for certain categories of activities, including "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused." *Id.* § 8111(1)(C). Doucette contends that any discretion Thomas may have had in her role as dispatcher was removed by virtue of the police department's standard operating procedures (SOPs). The SOPs require dispatchers to follow procedures outlined in the "Dispatcher's Guide to

Crimes/Incidents in Progress." The guide contains a checklist that directs dispatchers, when taking information relating to a potential missing person, to inquire whether the person has "[a]ny known problems: mental, suicidal? Suspect foul play?" Doucette also contends that Thomas's discretion was curtailed by the "Maine Metro Manual," which governs the procedures used by dispatchers in entering information onto the NCIC. The manual provides that in the case of "[p]ersons under 18 years of age, persons of any age mentally or physically incompetent[,] or suspected victims of foul play," a missing persons report should be entered onto the NCIC "immediately."

[¶ 6.] We agree that Thomas's activities as a dispatcher for the Lewiston Police Department fall within the discretionary function immunity provisions of section 8111(1)(C). In her role as a dispatcher, Thomas was called on to exercise judgment in evaluating incoming calls and determining initially how those calls should be handled. Her actions were essential to the basic objectives of the department. *See Rippett v. Bemis*, 672 A.2d 82, 88 (Me.1996) (to qualify as a discretionary function, an action must be essential to the realization or accomplishment of a basic governmental policy, program, or objective). We disagree with Doucette's contention that the Dispatcher's Guide and the Maine Metro Manual deprived Thomas of discretionary function immunity in this case. These controls on Thomas's behavior did not transform the basic discretionary nature of her duties.

## II.

[¶ 7.] Doucette contends that even if Thomas is entitled to discretionary function immunity, that immunity was waived because the City of Lewiston had law enforcement liability insurance coverage through its partic-

ipation in the Maine Municipal Association (MMA) Property & Casualty Pool. 14 M.R.S.A. § 8116 (Supp.1996) provides that "any political subdivision may procure insurance against liability for any claim against it or its employees for which immunity is waived," and "[i]f the insurance provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage." Section 8116 also provides that a governmental entity that participates in a self-funded insurance pool, such as the MMA pool, "shall maintain as part of its public records a written statement which shall include a provision setting forth the financial limits of liability assumed by the governmental entity . . . and a provision setting forth the scope of the liability assumed by the governmental entity, or the pool."

[¶ 8.] The insurance coverage provided to the City and its employees by the MMA pool is described in the City's member coverage certificate. The second page of the certificate contains the following language intended to "serve as the written statement required pursuant to [section 8116]:"

LIABILITY LIMITS:

. . . Coverage is limited to those areas for which governmental immunity has been expressly waived by 14 M.R.S.A. § 8104–A, as limited by 14 M.R.S.A. § 8104–B, and 14 M.R.S.A. § 8111. . . . [1] Liability coverage shall not be deemed a waiver of any immunities or limitation of damages available under the Maine Tort Claims Act, other Maine statutory law, judicial precedent, or common law.

The presence of a statement limiting liability distinguishes this case from *Stretton v. City of Lewiston*, 588 A.2d 739 (Me.1991). In *Stretton*, the City purchased insurance through the MMA pool, but its member cer-

---

1. The Maine Tort Claims Act exempts governmental entities from suit on "any and all tort claims" except as otherwise provided. 14 M.R.S.A. § 8103 (1980 & Supp.1996). Section 8104–A (Supp.1996) waives immunity for four categories of activities; however, section 8104–B (Supp.1996) limits that waiver with respect to certain governmental functions. Section 8111, as discussed above, provides personal immunity for certain categories of activities conducted by government employees.

tificate did not contain language limiting coverage to claims for which immunity had expressly been waived pursuant to the tort claims act. Thus we concluded there existed a genuine issue of fact regarding the scope of liability coverage provided by the pool. *Id.* at 741.

[¶ 9.] Our analysis of the instant case must take account of the limitation of liability statement. Our recent decisions in *Webb v. Haas*, 665 A.2d 1005 (Me.1995), and *Maynard v. Commissioner of Corrections*, 681 A.2d 19 (Me.1996), are controlling. In *Webb*, the plaintiffs brought an action against the State pursuant to the Maine Tort Claims Act, and the State raised the defense of immunity. Notwithstanding that the State had purchased liability insurance, we concluded it had not waived its immunity. Our decision relied on language in the policy that excluded coverage for any claim "for which the insured has immunity pursuant to the [tort claims act]." *Webb*, 665 A.2d at 1011. In *Maynard*, we concluded that participation by the Department of Corrections in a form of state-sponsored self-insurance did not amount to a waiver of the department's governmental immunity. The policy at issue in that case recited that coverage was excluded for "any claims for which there would otherwise be immunity under the Maine Tort Claims Act, under any other statute, or under the common law." *Maynard*, 681 A.2d at 23. Relying on that language, and referring to our analysis in *Webb*, we concluded that "the express terms of the self-insurance coverage provided to the Department ... preserved the State's immunity." *Maynard*, 681 A.2d at 24.

[¶ 10.] In the instant case, the limitation of liability statement contained in the City's member coverage certificate has an impact equivalent to the disclaimer language in *Webb* and *Maynard*. By limiting coverage to "those areas for which governmental immunity has been expressly waived," and by stating that coverage "shall not be deemed a waiver of any immunities or limitation of damages available under the Maine Tort Claims Act, other Maine statutory law, judi-

cial precedent, or common law," the City has preserved its immunity from suit.

The entry is:

Judgment affirmed.

