STATE OF MAINE
PENOBSCOT, ss.

DONALD L. GARBRECHT
LAW LIBRARY

MAY 25 2000

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-98-124

DHM — PEN —3/30/2000

CITY OF OLD TOWN, GARY E. KAREM, JR.,
and MARY C. KAREM,

Plaintiffs

v.                                                    **DECISION AND ORDER**

ANTONIOS DIMOULAS and CLAUDIA
LOWD DIMOULAS, d/b/a MARKET
CAFE,

Defendants

FILED AND ENTERED
SUPERIOR COURT

MAR 3 1 2000

PENOBSCOT COUNTY

This matter is before the court on plaintiffs' and defendants' cross-motions for summary judgment on the complaint and plaintiff City of Old Town's motion for summary judgment on defendants' counterclaims.

## I.      Facts and Procedural History[1]

Defendants Claudia and Antonios Dimoulas (hereinafter referred to jointly as defendants) are the owners and operators of a business known as the Market Cafe which is located at 827 Stillwater Avenue in Old Town, Maine. The entire piece of property is situated within the Low-Density Residence (R-1) zoning district and a portion of the property is also located within the Low-Density Residence Shoreland (R-1S) zoning district. On March 19, 1998, this court, in a related proceeding (AP-97-77), found that the primary authorized use of the subject property under the City's

---

[1] These facts have been taken from the entire file.

zoning ordinance was as a "neighborhood grocery store" as defined in section 102 of the Old Town Zoning Ordinance.

On March 25, 1998, defendant Claudia Dimoulas filed a petition in accordance with Article III of the Old Town City Charter seeking amendment of the Old Town Zoning Map through the initiative process. The petition sought to change the zoning classification of the subject property from R-1 to C-1, Commercial-Business. A public hearing was held on the proposed amendment on May 22, 1998 and the Old Town Planning Board voted unanimously not to recommend the adoption of the proposed ordinance for the following reasons:

> (1) the proposed amendment is not pursuant to and consistent with the Old Town Comprehensive Plan,
> (2) the proposed amendment constitutes illegal spot zoning,
> (3) many members of the public were not aware that the zone change was not limited to a restaurant use, and
> (4) even if the zoning classification was changed, a restaurant use at that location would likely not meet the land use standards of the zoning ordinance.

Notwithstanding this recommendation, the proposed amendment was approved by a majority of the voters in a special municipal election held on June 10, 1998 in response to Claudia's petition. On September 14, 1998, the Old Town Planning Board granted the defendants' application for site plan review to convert the subject property into a restaurant. This decision was not appealed.

2

On June 29, 1998, plaintiffs[2] filed the instant action for declaratory judgment against defendants. Plaintiffs seek a declaration that: (1) the amendment is not pursuant to and consistent with the Old Town Comprehensive Plan, (2) the amendment constitutes illegal spot zoning, and (3) the subject property also lies in the R-1S district and defendants' proposed use as a restaurant is not authorized within that district pursuant to section 111.0 of the ordinance.

Defendants answered the complaint and brought two counterclaims against the City of Old Town. The first counterclaim is brought pursuant to 42 U.S.C. § 1983 and 5 M.R.S.A. § 4681-4685 and alleges that the City has violated their right to due process by refusing to act on their appeal of the denial of their May, 1998 application for a victualer license. All victualer licenses in the City expire annually on May 31st. Defendants allege that the city clerk denied their 1998 application for renewal on May 27, 1998 based on her unfounded belief that they would operate a restaurant instead of a neighborhood grocery store under the terms of this court's March, 1998 order. Following this denial, defendants assert that they made several requests for reconsideration or referral of their appeal to the City Council which were not acted upon. On June 17, 1998, defendants were informed that their appeal was forwarded to the City Council which would act on the appeal at a future Council meeting. Defendants allege that as of the date of their answer (July 21, 1998), the City Council had not acted on their appeal or set the matter for hearing. Defendants' May, 1998

---

[2] The City of Old Town and Gary and Mary Karem will be referred to jointly as plaintiffs. The Karems are abutters to the property at issue in this case. Charles Heinonen, the Code Enforcement Officer for the City of Old Town, was initially named as a plaintiff in this action but has subsequently been dismissed.

application for a victualer's license was not granted until October 5, 1998, after their application for site plan review was granted.

Defendants' second counterclaim alleges that the City Manager, Ron Singel, acting within the scope of his employment, made defamatory statements, which he knew or should have known were not true, about the defendants. Specifically, Singel was quoted in the Penobscot Times on June 17, 1998 as saying that "It appears these people may be more devious than we originally thought." Defendants allege that the City is liable for Singel's actions on the theory of respondeat superior.

## II. Discussion

### A. Cross-motions for Summary Judgment on the Complaint

In count one of the complaint, plaintiffs allege that the zoning amendment adopted by the referendum voters is void and invalid as a matter of law because it is not pursuant to and consistent with the Old Town Comprehensive Plan. Pursuant to 30-A M.R.S.A. § 4352(2) (1996), "[a] zoning ordinance must be pursuant to and consistent with a comprehensive plan adopted by the municipal legislative body." "The parties challenging the [legislative body's] action have the burden of showing inconsistency between the rezoning and the comprehensive plan." *LaBonta v. City of Waterville*, 528 A.2d 1262, 1265 (Me. 1987). On appeal, this court is to review the record to "determine whether, from the evidence before it, the legislative body of the Town could have determined that the amendments are in basic harmony with the comprehensive plan . . . ." *Vella v. Town of Camden*, 677 A.2d 1051, 1053 (Me.

1996).  In doing so, this court cannot substitute its judgment for that of the legislative body.  *Id.*

This case is in a unique posture in that the "legislative body" which adopted the zoning amendment at issue was the referendum voters of the City of Old Town. Although not addressed by the parties in this action, the court was concerned about the implications the adoption of a zoning amendment by referendum might have on the court's review of that amendment.  Specifically, the court has investigated whether the adoption of a zoning amendment by referendum would or could impliedly amend the comprehensive plan so that the two are consistent with one another.  In *Lesher Communications, Inc. v. City of Walnut Creek*, 802 P.2d 317 (Cal. 1990), the California Supreme Court rejected the idea of implied amendment of a comprehensive plan by referendum.  That court found:

> We cannot at once accept the function of a general plan as a "constitution," or perhaps more accurately a charter for future development, and the proposition that it can be amended without notice to the electorate that such amendment is the purpose of an initiative.  Implied amendments or repeals by implication are disfavored in any case, and the doctrine may not be applied here.  The Planning and Zoning Law itself precludes consideration of a zoning ordinance which conflicts with a general plan as a pro tanto repeal or implied amendment of the general plan.  The general plan stands.  A zoning ordinance that is inconsistent with the general plan is invalid when passed . . . The Planning and Zoning Law does not contemplate that general plans will be amended to conform to zoning ordinances. The tail does not wag the dog.  The general plan is the charter to which the ordinance must conform.

*Id.* at 322 (citations omitted).  *See also* Nicolas M. Kublicki, *Land Use By, For, and of the People: Problems with the Application of Initiatives and Referenda to the Zoning Process*, 19 Pepp. L. Rev. 99 (1991).  This court finds that a zoning ordinance

5

which is amended through the referendum process does not impliedly amend a comprehensive plan so that the two are consistent with one another. Rather, the zoning amendment, regardless of how it is adopted, must be pursuant to and consistent with the town's comprehensive plan in order to be valid. The plaintiffs, as the parties challenging the zoning amendment, bear the burden of showing that the amendment is inconsistent with the comprehensive plan. In reviewing this claim, this court's review is limited to determining whether, from the evidence before it, the legislative body of the Town, the referendum voters, could have determined that the amendments are in basic harmony with the comprehensive plan. If so, then this court must find the zoning amendment consistent with the plan and therefore, valid.

Under M.R. Civ. P. 7(d)(1), the party filing a motion for summary judgment is required to file a "separate, short and concise statement of the material facts, supported by appropriate record references, as to which [he] contends there is no genuine issue to be tried." Similarly, under M.R. Civ. P. 7(d)(2), the party opposing a motion for summary judgment is required to file a "separate, short and concise statement of the material facts, supported by appropriate record references, as to which it is contended that there exists a genuine issue to be tried." These rules are "intended to compel parties to frame their arguments in favor of, or in opposition to, a summary judgment narrowly and enable the court to determine whether any genuine issues of material fact exist without having to engage in an exhaustive review of the record." *Gerrity Co., Inc. v. Lake Arrowhead Corp.*, 609 A.2d 293, 295

(Me. 1992). Both parties in the instant case have failed to fully comply with the requirements of Rule 7(d) in moving for summary judgment on the complaint.

In regards to defendants' cross-motion for summary judgment, the court has been unable to locate a separate statement of material facts in support of this motion. Defendants' motion states that it is "based on the affidavits" of Patricia Ramsey, Charles Heinonen, Robert Miller, and Antonios Dimoulas which are "attached to [the] motion." If defendants intended to rely on their Rule 7(d) statement submitted in opposition to plaintiffs' motion for summary judgment, they should have at least indicated this intent in their motion and in the statement itself.[3] The court also notes that the plaintiffs have failed to file a statement of material facts in opposition to the defendants' cross-motion for summary judgment on the complaint. Plaintiffs did file a memorandum in opposition to the motion which indicates that they are "adopt[ing] by reference" various affidavits and exhibits which were submitted by them in support of their motion for summary judgment. Pls' Opposition to Defs' Motion for Summary Judgment at 2. Like the defendants, if plaintiffs intended to rely on their Rule 7(d) statement filed in support of their motion for summary judgment, they should have indicated this intent in their opposition.[4] As a result of the parties' failure to file the required Rule 7(d) statements, this court is unable to determine whether or not a genuine issue of

---

[3] The court notes, however, that this procedure itself may not be sufficient to comply with Rule 7(d). *See Bennett v. Tracy,* 1999 ME 165, ¶ 14, 740 A.2d 571, 574.

[4] *But see infra* note 2.

material fact exists and therefore must deny the defendants' cross-motion for summary judgment on the complaint in its entirety.

The parties have also failed to comply with Rule 7(d) in regards to plaintiffs' motion for summary judgment on the complaint. In ruling on a motion for summary judgment, "the court is to consider only the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements." *Handy Boat Serv., Inc. v. Professional Servs., Inc.*, 1998 ME 134, ¶ 16, 711 A.2d 1306, 1310 (quoting *Gerrity Co., Inc.*, 609 A.2d at 295). Although the defendants in this case filed a statement of material facts in opposition to plaintiffs' motion for summary judgment, several of the factual allegations contained therein do not have record references as required by Rule 7(d)(2). *See* Defs' SMF ¶¶ 6-17. Those portions of defendants' Rule 7(d) statement which lack record references "are unsupported speculation that do[] not generate a genuine issue of material fact." *Biette v. Scott Dugas Trucking & Excavating*, 676 A.2d 490, 494 (Me. 1996). Thus, the court will not consider the factual allegations in paragraphs 6-17 of defendants' statement in ruling on plaintiffs' motion for summary judgment on the complaint.

Regarding the plaintiffs' statement of material facts filed in support of their motion for summary judgment, paragraphs 2 and 6 of the statement are not supported by appropriate record references. Plaintiffs support their factual assertions in those paragraphs with general citations to Heinonen and Ramsey's affidavits. "The statement of material facts requirement of Rule 7(d) is designed to force litigants to narrowly frame their summary judgment contentions, enabling the

8

court to decide a summary judgment motion without engaging in an exhaustive review of the record." *Corey v. Norman, Hanson & Detroy*, 1999 ME 196, ¶ 8, -- A.2d --, --. This purpose is not served when a party provides only general citations to the material in the record, thereby requiring the court to search for the specific portions of the record relied upon by the party. Such general citations are not the "appropriate record references" contemplated by Rule 7(d). Consequently, the factual allegations in paragraphs 2 and 6 of plaintiffs' statement of material facts are not properly supported and will not be considered by the court in ruling on their motion for summary judgment on the complaint.

### 1. Count One - Consistency with the Comprehensive Plan

As a result of the parties' failure to comply with the requirements of Rule 7(d), this court must deny plaintiffs' motion for summary judgment on count one of the complaint. The parties have failed to properly present enough facts and evidence to allow this court to decide whether or not the ordinance amendment is consistent with the comprehensive plan. Specifically, neither party has cited to the relevant portions of the comprehensive plan in their Rule 7(d) statements in support of their respective positions on whether the amendment is consistent with that plan. Having failed to do so, this court cannot determine whether the zoning amendment is consistent with that plan.

Additionally, the parties have failed to provide this court with any evidence in their statements regarding the exact location of the Market Cafe in relation to Stillwater Village. The only information provided by the parties is the Cafe's street

9

address, 827 Stillwater Avenue. Pls' SMF ¶ 4, Defs' SMF ¶ 3.[5] The exact location of the property in relation to Stillwater Village is a critical factor in assessing whether the amendment is consistent with the comprehensive plan because the plan makes several distinctions between Stillwater Avenue and Stillwater Village in discussing the propriety of commercial development in those areas.[6] The parties' failure to provide the court with this information also makes it impossible for this court to determine whether the zoning amendment is consistent with the comprehensive plan. Therefore, plaintiffs' motion for summary judgment on count one of the complaint must be denied.

---

[5] Defendants have provided a general description of area surrounding the Cafe but this description still does not inform the court of the property's location in relation to Stillwater Village. Defs' SMF ¶ 3. Defendants have also submitted a map showing the location of the Market Cafe, however, this exhibit is not cited to in their Rule 7(d) statement and so this court cannot consider it in ruling on the pending motions. Additionally, the map does not indicate the property's location in relation to Stillwater Village. *See* Exhibit A filed with the court on June 28, 1999.

[6] For instance, in regards to commercial development on Stillwater Avenue, the plan notes that "[s]mall scale commercial growth will occur on Stillwater Avenue and downtown" and that "[t]he land adjacent to arterials such as Stillwater Avenue is an attractive, convenient location for business and residential development." City of Old Town, Me., Comprehensive Plan 11-2, 8-7 (April, 1995). *See also id.* at 9-1 (noting that "Downtown is still an important local commercial center, although Stillwater Avenue has superseded downtown as the principal commercial area"); 9-4 (noting that "[t]here is now a great deal of commercial activity along Stillwater Avenue"). Regarding Stillwater Village, the Plan states that "[a]lthough Stillwater Village is not a commercial center, it remains a desirable residential community." *Id.* at 9-1. The Plan's characterization of Stillwater Village is as follows:

> Old Town can be delineated into a number of distinct residential neighborhoods, such as the central core area, Treat and Webster Island, Pea Cove, Great Works, Stillwater Village, Pushaw, and West Old Town. Each area is long established, and residents have a certain identity and pride of their own. The core area, Stillwater Village, Treat and Webster Island, and Great Works are the high density residential areas where the majority of Old Town's population lives. These middle income areas are characterized by sound, well-maintained, single and multi-family homes of traditional late 19th and 20th century architecture. Lot frontages are generally small and homes quite close together. Much of Old Town's housing stock (44.5%) was constructed prior to 1940.

*Id.* at 4-1. Stillwater Village is one of the "residential areas of highest density" in Old Town. *Id.*

## 2. Count Two - Illegal Spot Zoning

Plaintiffs argue that the amendment constitutes illegal spot zoning. They argue that none of the land use goals or policies in the comprehensive plan contemplate rezoning of the subject property for commercial purposes. They note that the amendment was selected and submitted for the benefit of a single owner, that it changes the zoning of a single piece of land to a classification totally different from all of the land in the surrounding area, and that the Planning Board found that the new zoning would be a detriment to the abutting property owner as well as the whole neighborhood.

"Spot zoning is a neutral term encompassing both legal and illegal land use controls." *Vella v. Town of Camden*, 677 A.2d 1051, 1053 (Me. 1996). "The fact that a zoning amendment benefits only a particular property or is adopted at the request of a particular property owner for that owner's benefit is not determinative of whether it is an illegal spot zoning." *Id.* (citing various authorities including Orlando E. Delogu, *Maine Land Use and Zoning Control* § 7.01 at 450 (1992) ("The fact that some [zoning] amendments treat with small areas or are suggested by a landowner-developer does not mean that the rezoning should not be adopted.")).

In *Vella*, the plaintiffs argued that the amendments to the Town of Camden's zoning ordinance were inconsistent with the Town's comprehensive plan and constituted illegal spot zoning. *Id.* at 1052. Following a brief discussion of the law on inconsistency and spot zoning, the Law Court found that the amendments were consistent with the comprehensive plan. *Id.* at 1053-54. No further mention is

11

made of plaintiffs' claim that the amendments constituted illegal spot zoning. Thus, from this decision, it is apparent that when amendments to a zoning ordinance are consistent with the municipality's comprehensive plan, those amendments are not illegal spot zoning. Therefore, in the instant case, plaintiffs' claim that the amendments constitute illegal spot zoning can only be considered after the court decides whether the amendment is consistent with the comprehensive plan. Consequently, plaintiffs' motion for summary judgment on count two must also denied because the court cannot determine at this point in time whether the amendment is consistent with the comprehensive plan.

### 3. Count Three - The R-1S Designation

Plaintiffs argue that prior to the amendment the subject property was located in two zoning districts, R-1 and R-1S. The amendment sought and obtained by the defendants only referenced changing the R-1 designation to a C-1 designation. As a result of defendants failure to seek amendment of the R-1S designation, plaintiffs argue that the R-1S classification still applies to the subject property. Under that classification, the only uses permitted are those in a R-1 zone and therefore a restaurant is not allowed. Plaintiffs argue that the amendment could not change the R-1S designation automatically because zoning classifications are established "legislatively by designation on the City's Shoreland Zoning Map," citing section 104.21(F)(A) of the ordinance.

Defendants respond that upon amendment of the property's zone to C-1, the R-1S designation had to change to C-1S. They note that the ordinance provides that

12

the R-1S zone is limited to the shoreland area of the R-1 zone, citing section 104.21(J)(b) of the ordinance. To the extent that the Shoreland Zoning Map needs to be specifically amended to change the designation from R-1S to C-1S, defendants assert that that is a ministerial act which the City must perform. Defendants further argue that the September 14, 1998 site plan approval of their proposed restaurant by the Old Town Planning Board was unconditional, Defs' SMF ¶ 4, and no one involved in that process questioned whether the R-1S designation affected the defendants' proposed use. Defendants argue that this court is without jurisdiction to vacate that approval.

There is no mention in either party's statement of material facts of the subject property's classification as a R-1S district. Neither party cites to the actual referendum question used in seeking approval of the amendment by the voters or to the relevant provisions of the shoreland zoning ordinance. Because of the lack of relevant facts in the parties' Rule 7(d) statements, this court must deny plaintiffs' motion for summary judgment on this count of the complaint.[7]

B. Plaintiff Old Town's Motion for Summary Judgment on defendants' counterclaims

1. Count 1 - Violation of Due Process

In support of their motion for summary judgment on this count, the City argues that, even though it did not address the defendants' appeal of the May, 1998

---

[7] If the court finds that the ordinance amendment is consistent with the comprehensive plan and is otherwise valid, then it appears that the shoreland zoning ordinance, by its terms, prohibits an R-1S zone in a C-1 zone. *See* City of Old Town, Me., Zoning Ordinance § 104.21(J)(b) (cited by defendants in their opposition to plaintiffs' motion for summary judgment on the complaint at 11).

denial of their application for a victualer's permit in a timely fashion, their failure to do so did not constitute a denial of defendants' due process rights because their appeal was rendered moot by virtue of the zoning amendment changing their property from R-1 to C-1. Specifically, the City argues that, as a result of the zoning amendment, the defendants were required to undergo a site plan review prior to changing the property into a restaurant. Only after they obtained site plan approval could they then be issued a victualers license. Thus, the defendants' appeal was rendered moot by the zoning amendment because even if the City had considered their appeal, the license still could not be issued until after the defendants received site plan approval. Essentially, the City argues that their failure to consider the defendants' appeal deprived the defendants of nothing because they were not entitled to a victualers license until after they obtained site plan approval for their restaurant in September of 1998.

The defendants argue that under either zoning classification, R-1 or C-1, they had the right to operate a neighborhood market, in compliance with Justice Kravchuk's order, without site plan approval. The only thing they needed to operate the Cafe as a neighborhood market was the victualer's license. Defendants assert that if they had been granted the license, then they could have operated their market from June 1, 1998 through October of 1998 but that without the license, they were forced to close their business. They argue that the zoning amendment had no impact on their right to operate as a neighborhood market while they were waiting for site plan approval to operate as a restaurant.

14

In order for defendants to avoid summary judgment on this counterclaim, they needed to raise a genuine issue of material fact with regard to whether they were entitled to a victualer's license, notwithstanding their pending application for site plan review to operate a restaurant on the property. The City alleges in paragraph 30 of its statement of material facts that the defendants' application for a victualer's license was denied the City Clerk because a restaurant was not an authorized use in an R-1 zone. Defendants dispute that they were operating a restaurant and allege that they were operating a neighborhood market in accordance with the October 24, 1995 ZBA decision[8] and with the order issued by Justice Kravchuk on March 19, 1998. Defs' SMF ¶¶ 24, 26, 30. These allegations raise a genuine issue of material fact with regard to whether the defendants were entitled to a victualer's license based on their asserted operation of the Cafe as a neighborhood market. Therefore, a genuine issue of material fact has been raised as to whether the City violated the defendants' right to due process as the result of its failure to act on their appeal of the denial of their application for the license.[9]

---

[8] Although the scope of this decision is disputed between the parties, it is undisputed that this decision gave the defendants the right to sell food for on-site consumption. *See* Defs' and City's SMF ¶¶ 3-6.

[9] The court notes that the Maine Tort Claims Act expressly provides that a governmental entity is not liable for any action which results from the "[u]ndertaking or failing to undertake any judicial or quasi-judicial act, including, but not limited to, the granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial." 14 M.R.S.A. § 8104-B(2). The City has not raised the applicability of this section to the defendants' due process claim even though it appears to bar the claim. The court will not rule on the applicability of section 8104-B(2) at this point in time as the parties have not addressed this issue.

## 2. Count 2 - Defamation

The Maine Tort Claims Act (MTCA) provides that "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery for damages." 14 M.R.S.A. § 8103(1) (1980). Defendants do not argue, nor could they, that their claim for defamation falls within any of the four statutory exceptions to the general rule of immunity. *See* 14 M.R.S.A. § 8104-A(1-4) (Supp. 1999). Instead, they rely on the MTCA provision which states that if a governmental entity obtains insurance which "provides coverage in areas where the governmental entity is immune, the governmental entity shall be liable in those substantive areas but only to the limits of the insurance coverage." 14 M.R.S.A. § 8116 (Supp. 1999). They argue that the City has insurance which provides coverage for the alleged defamatory acts of Ron Singel and so it is not immune from suit on this claim. In moving for summary judgment on this claim, the City argues that, although it has obtained insurance coverage through the Maine Municipal Association Property and Casualty Pool, their policy only provides coverage for those claims which fall within the exceptions to immunity in the MTCA. Therefore, because the claim for defamation does not fall within any of the exceptions to immunity, they are immune from suit on this claim.

The City's insurance policy has a Member Coverage Certificate which states in pertinent part:

16

LIABILITY LIMITS:
Coverage is limited to those areas for which governmental immunity has been expressly waived by 14 M.R.S.A. § 8104-A, as limited by 14 M.R.S.A. § 8104-B, and 14 M.R.S.A. § 8111 . . . Liability coverage shall not be deemed a waiver of any immunities or limitation of damages available under the Maine Tort Claims Act, other Maine statutory law, judicial precedent, or common law.

City's SMF ¶ 54. Based on the plain language of the policy, coverage is limited to areas where immunity has been expressly waived in the MTCA. In *Doucette v. City of Lewiston*, 1997 ME 157, 697 A.2d 1292, the Law Court held that this same language in an insurance policy obtained by the City of Lewiston from the Maine Municipal Association Property and Casualty Pool was sufficient to preserve the municipality's immunity from suit. *Id.* ¶¶ 8, 10, 697 A.2d at 1294-95. Therefore, the above limitation of liability statement preserved the City of Old Town's immunity from suit and the City's motion for summary judgment on this counterclaim must be granted.

III. Conclusion

Therefore, for all the reasons above, the entry shall be:

Plaintiffs' motion for summary judgment on the complaint and defendants' cross-motion for summary judgment on the complaint are DENIED. Plaintiffs' motion for summary judgment on defendants' counterclaims is DENIED as to count one and GRANTED as to count two.

Dated: March 2𝑓, 2000

Donald H. Marden
Justice, Superior Court

17

Date Filed __6/29/98__       PENOBSCOT      Docket No. __CV-98-124__

County

**COUNTERCLAIM**

Action __CIVIL-DECLARATORY JUDGMENT__

ASSIGNED TO JUSTICE MARSANO

*6/8/99 Charles Heinonen dismissed.

3/30/00  CT II of Deft's Counterclaim
Summ Judgment entered for Pltf.

CITY OF OLD TOWN,
* CHARLES E. HEINONEN,
GARY E KAREM, JR. and
MARY C. KAREM,

vs.

ANTONIOS DIMOULAS and
CLAUDIA LOWD DIMOULAS
d/b/a MARKET CAFE,

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Robert Miller, Esq.<br>17 North Main St., PO Box 414<br>Old Town, Maine 04468-0414<br><br>THOMPSON & BOWIE<br>P O BOX 4630, PORTLAND ME 04112<br>BY: Mark V. Franco, Esq. (Co-counsel) | BRUCE MALLONEE, ESQ.<br>EDMOND BEAROR, ESQ.<br>RUDMAN & WINCHELL<br>P O BOX 1401<br>BANGOR, ME 04402-1401<br>FOR: ALL DEFENDANTS |

| Date of Entry | |
|---|---|
| 6/29/98 | Complaint filed. Exhibit A attached. |
| 7/2/98 | Case File Notice and Pretrial Scheduling Statement and Jury Demand forwarded to Plaintiff's Counsel. |
| 7/7/98 | Acknowledgment of Receipt of Summons and Complaint filed by Edmond Bearor, Esq. on behalf of Defendant Antonios Dimoulas. (s.d. 7/1/98) |
| 7/7/98 | Acknowledgment of Receipt of Summons and Complaint filed by Edmond Bearor, Esq. on behalf of Defendant Claudia Lowd Dimoulas. (s.d. 7/1/98) |
| 7/8/98 | Pretrial Scheduling Statement filed by Plaintiff. |
| 7/15/98 | $300.00 Jury Trial Fee paid by Defendant. |
| 7/21/98 | Answer, Affirmative Defenses and Counterclaim filed. (Counterclaim Summary Sheet **NOT** filed) |
| 7/22/98 | Summary Sheet on Counterclaim filed by Defendants. |
| 7/22/98 | Certificate of Service upon Andrew Ketterer, Esq, State of Maine Attorney General filed. (s.d. 7/20/98) |
| 7/27/98 | Exhibits A through E to Defendants' Answer, Affirmative Defenses and Counterclaim of Antonios and Claudia Dimoulas filed. |
| 7/31/98 | Expedited Pretrial Order filed. Discovery to be closed by 1/1/99. Case ordered placed on the non-jury trial list 30 days after close of discovery. By order of the presiding justice the Expedited Pretrial Order is incorporated by reference in the docket. (Kravchuk, CJ.) Copy forwarded to attorneys of record. Report of Conference of Counsel form forwarded to Plaintiff's Counsel. |