2002 ME 80

**Ryan SELBY**

v.

**CUMBERLAND COUNTY et al.**

Supreme Judicial Court of Maine.

Argued: Dec. 5, 2001.
Decided: May 15, 2002.

Stephen Kottler (orally), Michael J. Welch, Hardy Wolf & Downing, P.A., Lewiston, for plaintiff.

John J. Wall, III (orally), Kevin G. Libby, Monaghan Leahy, LLP, Portland, for defendant.

Panel: CLIFFORD, J., and RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Ryan Selby appeals from a summary judgment entered in the Superior Court (Cumberland County, *Mills, C.J.*) in favor of Cumberland County, Sheriff Mark Dion, and Officer Kevin Joyce. Selby seeks to recover damages for injuries he sustained in a car accident that occurred during a high-speed chase initiated by Joyce when the operator of the car in which Selby was a passenger refused to stop on Joyce's signal. Selby contends that Joyce acted negligently and in violation of departmental policy when he decided to pursue the car in which Selby was a passenger, and that, because Joyce's actions violated agency policy, the immunity provided by the Maine Tort Claims Act should not be available to Joyce, and consequently to the other defendants.[1] We affirm the judgment.

[¶ 2] On October 11, 1997, Selby was a passenger in a car being driven by Joshua Williams. Williams was driving approximately twenty miles per hour over the speed limit when he was "tagged" by Joyce, who was operating a Cumberland County Sheriff's Department patrol cruiser. Joyce pulled up behind Williams and turned on his lights. Williams did not pull over, but attempted to evade Joyce by driving away at a high-speed.[2] Joyce pursued Williams. During the chase, Williams crashed into another car. The collision killed Williams and severely injured Selby.

[¶ 3] The Cumberland County Sheriff's Department has a policy manual that provides guidance to officers about engaging in high-speed chases in order to apprehend fleeing suspects. The section of the manual dealing with high-speed pursuits provides, in pertinent part:

A deputy may pursue a vehicle only when he has probable cause to believe the violator has committed or is attempting to commit a serious crime (a felony involving the use or threatened use of violence) or when the necessity of immediate apprehension in case of a misdemeanor outweighs the level of danger created by the pursuit (e.g., OUI, reckless driving). Deputy [sic] shall not pursue vehicles for minor traffic violations or violations of town ordinances.

The manual further provides:

The decision to begin, responsibility for continuing, and the choice of method of pursuit rests primarily, if not solely, with the individual deputy involved. In deciding, the deputy is faced with a dilemma because, although the law does not prevent the deputy from using emergency speeds while engaged in pursuit, it does hold him/her criminally and civilly responsible for his/her action.

[¶ 4] In his complaint seeking damages for personal injury, Selby alleges that Joyce is liable because it was negligent for him to initiate the high-speed pursuit, and that the other defendants are liable on a

---

1. Because respondeat superior is the only theory of liability against the Sheriff and the County, both parties agree that the liability of all the defendants turns on whether Joyce can be held liable. It is clear that Selby is not attempting to sue Sheriff Dion in his personal capacity.

2. Although it is not certain how fast Williams was driving his car when he was attempting to get away, Joyce stated in his report of the incident that he had been driving between seventy and eighty miles per hour while pursuing Williams and had difficulty keeping up with him.

theory of respondeat superior.[3] The defendants moved for summary judgment prior to the completion of discovery on the grounds that they were protected by immunity pursuant to the Maine Tort Claims Act. Selby opposed the summary judgment and, pursuant to M.R. Civ. P. 56(f), requested that the court delay ruling on it until after discovery had been completed.[4]

[¶ 5] In entering a summary judgment in favor of the defendants, the court concluded that the decision of whether to initiate a high-speed pursuit was a discretionary one and consequently within the protection of the immunity provisions of the Maine Tort Claims Act, even though Joyce's actions may have been contrary to departmental policies. The court also concluded that the County and the Sheriff could not be held vicariously liable for Joyce's actions if Joyce himself was immune. In declining to delay the entry of summary judgment pursuant to Rule 56(f), the court concluded that there was no evidence that Selby could reasonably be expected to discover that would affect the immunity enjoyed by the defendants. This appeal by Selby followed.

## SUMMARY JUDGMENT

[¶ 6] The Maine Tort Claims Act confers on government officials absolute immunity from suit for their discretionary actions. *Carroll v. City of Portland*, 1999 ME 131, ¶ 6, 736 A.2d 279, 282. Immunity exists even when the official lacked the authority to do the act, or abused the discretion.[5] *Id.*

[¶ 7] An act qualifies as a discretionary function if the act is essential to the realization or accomplishment of a basic governmental policy program or objective, *Doucette v. City of Lewiston*, 1997 ME 157, ¶ 6, 697 A.2d 1292, 1294 (citing *Rippett v. Bemis*, 672 A.2d 82, 88 (Me. 1996)), and *"require[s] the exercise of basic policy evaluation, judgment, and expertise* on the part of the governmental employee involved." *Carroll*, ¶ 7, 736 A.2d at 282–83. The enforcement of the traffic laws within Cumberland County is certainly a basic governmental objective of county government. As a patrol officer, Joyce's duties included enforcement of the highway traffic laws, and he was called on to exercise his judgment in deciding what actions to take in the enforcement of those laws.

[¶ 8] Selby concedes that the decision of whether to engage in a high-speed pursuit of a suspect would be discretionary if the determination of when to engage in such pursuits were left entirely to the individual

---

**3.** Not all of the counts in Selby's complaint are before us. Selby's claim pursuant to 42 U.S.C. § 1983 was voluntarily dismissed. Selby also sought to impose liability on Sheriff Dion and the County for negligent supervision and training. Selby does not challenge the summary judgment for the defendants on that claim.

   A count later added to Selby's complaint alleged that the Cumberland County Sheriff's Department negligently failed to "own, deploy and employ spiked mats to puncture the tires of vehicles whose operators refuse to stop upon police command." Selby does not challenge the court's determination that the acquisition and use of mats is discretionary.

**4.** In support of the motion, Selby offered the affidavit of his attorney, in which his attorney stated that Selby lacked evidence sufficient to defeat the motion for a summary judgment, but had reasonable grounds to believe that such evidence would be obtained during discovery.

**5.** A governmental official will not be shielded from liability, however, for actions that so *clearly exceed* the scope of the official's authority that the official cannot be said to be acting in an official capacity. *MacKerron v. Madura*, 474 A.2d 166, 167 (Me.1984) (clarified and distinguished in *Polley v. Atwell*, 581 A.2d 410, 414 (Me.1990)).

officer. *Cf. Leach v. Betters,* 599 A.2d 424, 426 (Me.1991) (the decision of whether to arrest a perpetrator of a minor offense is discretionary). Selby urges us to conclude that "when a government employee's actions are outside the specific authority granted by the decision-makers in the government agency, the employee is not entitled to discretionary function immunity."[6] He contends that any discretion that Joyce may have had to pursue Williams was eliminated by the Department's policy forbidding high-speed pursuits of minor traffic offenders. We disagree. Although the Cumberland County Sheriff's Department has a policy to discourage high-speed pursuits in non-felony cases, the policy does not eliminate all discretion of an officer to determine whether to pursue a motorist.

[¶ 9] An act can be protected by discretionary immunity even though the discretion is not unfettered. In *Doucette,* a woman called the police to report that her potentially suicidal husband had stolen his brother's car and was missing. *Doucette,* ¶ 2, 697 A.2d at 1293. According to department guidelines, anytime a dispatcher received a call about a missing person, the dispatcher was required to find out if the missing person was suffering from mental illness and, if so, to report the missing person's name to the National Crime Information Center (NCIC). *Id.* The wife did not fully explain the situation to the dispatcher, however, and the dispatcher did not elicit the relevant information about the husband's mental illness, and did not enter information about the husband or the vehicle into the NCIC. *Id.* Later that same day, the husband was interrogated by a police officer in New Hampshire after he was involved in an accident there. *Id.* ¶ 3, 697 A.2d at 1293. Had his name and the vehicle's registration number been listed on the NCIC database, then the New Hampshire officer would have known about the husband's mental illness. *Id.* Because the information was not entered, however, the officer did not detain the husband, who subsequently committed suicide. *Id.* The wife sued the city, claiming that the dispatcher had no discretion about how to handle incoming calls because of the clear guidelines that provided that she was to elicit certain information about a missing person's mental state and to report the person's name to NCIC if the person was emotionally unstable. *Id.* ¶ 4, 697 A.2d at 1293.

[¶ 10] We concluded that the guidelines did not completely eliminate the discretionary nature of the dispatcher's duties because when performing her duties the dispatcher "was called on to exercise judgment in evaluating incoming calls and determining initially how those calls should be handled." *Id.* ¶ 6, 697 A.2d at 1294. In this case, Joyce was called on to exercise judgment about how to handle traffic law violations. That there is a Sheriff Department policy discouraging high-speed chases for routine traffic violations does not alter the discretionary character of Joyce's conduct.[7] Joyce's act does not lose its

---

6. Selby also argues that immunity is not available if Joyce made the decision to pursue the vehicle in bad faith (specifically, because Williams was African–American). Selby cites 14 M.R.S.A. § 8111(E) as authority for a bad faith exception to immunity. The bad-faith provision in section 8111(E) applies only to the grounds for immunity contained in that subsection, however. The defendants rely on section 8111(C), which provides a separate basis for immunity and contains no bad-faith exception.

7. Selby argues that *Doucette* is distinguishable because the regulations in *Doucette* left some discretion to the dispatcher to decide how to handle incoming calls. The reasoning of *Doucette* looked solely to the nature of the action to determine if it was discretionary, however. *See Doucette,* ¶ 6, 697 A.2d at 1294.

discretionary character merely because there are policy guidelines delineating how the discretion should be exercised.[8]

[¶ 11] We decline Selby's invitation to overturn *Doucette* and settled law in Maine and follow decisions of the federal courts interpreting the Federal Tort Claims Act, and some state courts interpreting their own acts.[9] We have construed the language of our Tort Claims Act in a manner that is consistent with its language and with the policy of the Act.

## THE RULE 56(f) MOTION

[¶ 12] Selby also contends that the Superior Court should have delayed ruling on the motion for summary judgment until Selby had a chance to conduct discovery, during which, he asserts, he may have found evidence that would demonstrate that the defendants were not protected by immunity under the Maine Tort Claims Act.[10] We review the trial court's order denying the Rule 56(f) motion for an abuse of discretion.[11]

[¶ 13] Selby identified five areas that he would have liked to investigate in discovery: (1) whether Joyce and the other deputies acted in bad faith (specifically, whether the chase was motivated by the driver's race), (2) what the basis for the pursuit was, (3) whether Joyce violated the policies of the Department regarding high-speed chases, (4) whether there is a pattern of conduct that gives rise to an effective notice of violation of the policy; and (5)

8. *Polley v. Atwell*, 581 A.2d 410, 414 (Me. 1990) (no immunity for conduct only if it could not have fallen within the scope of any discretion possessed by official).

9. The federal courts have interpreted the federal act to mean that a government official enjoys immunity only if the decision involved is a policy-making decision; actions that are not part of formulating government policy, even if they entail some degree of discretion, are not protected under the Federal Act. *See, e.g. Hitchcock v. United States*, 665 F.2d 354, 363 (D.C.Cir.1981).

10. Selby also appeals the decision of the trial court to strike those portions of his attorney's affidavit that averred that he had good cause to believe that Selby might discover evidence that would defeat the summary judgment motion. Even though it struck those portions, the Superior Court did address the legal arguments made in the affidavit. Thus, Selby's rights were not affected by the decision to strike.

11. Rule 56(f) provides, in its entirety:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or deposi-

tions to be taken or discovery to be had or may make such other order as is just.

While Rule 56(f) is a procedural rule relating to summary judgment, an order issued pursuant to Rule 56(f) is properly reviewed as a discretionary order because the factors that a trial court must consider when deciding a Rule 56(f) motion are similar to the considerations a court must take into account when issuing an order pertaining to discovery. Discovery orders are generally reviewed for abuse of discretion. *St. Paul Ins. Co. v. Hayes*, 2001 ME 71, ¶ 7, 770 A.2d 611, 613 (appropriateness of sanction for violation of discovery order reviewed for abuse of discretion); *Black v. Ward*, 633 A.2d 81, 83 (Me. 1993) (discovery orders are pretrial orders and consequently reviewed for abuse of discretion). The interests of fairness, justice, as well as judicial economy must all be considered by the court. Moreover, the use of the word "may" in Rule 56(f) instead of "shall" indicates that the court has discretion as to whether to grant such a motion, and that the merits of doing so have to be assessed on a case-by-case basis.

We recognize that a ruling on a Rule 56(f) motion will often be integrated into the decision on whether to enter a summary judgment (as was done here), and that there will be pure questions of law intertwined with the discretionary questions raised by the Rule 56(f) ruling. We would review these questions of law de novo.

whether there is any training regarding the policy. The Superior Court acted within its discretion in concluding that Joyce, and consequently the Department, would enjoy immunity regardless of any evidence that Selby would be likely to discover, and that any such information would not be relevant to Selby's claims.

[¶ 14] Selby's claim based on negligent training and supervision is not on appeal. Joyce would still have immunity even if his actions did not comply with the policy discouraging high-speed chases. Finally, Selby has not identified any way that Joyce's motive for initiating the pursuit would change the outcome.[12] Nothing that Selby would be likely to uncover during a period of discovery would overcome the defense of immunity and change the outcome in this case. Accordingly, the Superior Court acted within its discretion in entering a summary judgment in favor of the defendants before discovery was completed.

The entry is:

Judgment affirmed.