STATE OF MAINE

KNOX, ss.

STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT
APR 25 2001
RECEIVED AND FILED
Susan Guillette, Clerk

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-043
JRA - KNO - 4/25/2001

DONALD SYMINGTON,
d/b/a LOGICAL CHOICE
BOAT RENTALS and
INSTRUCTION, INC.,

      Plaintiff

v.

REPOWER SERVICES, INC.,

      Defendant

DECISION, ORDER
AND JUDGMENT

This matter is before the court on the plaintiff's motion for default judgment and the defendant's motion to set aside default. On the date these matters were heard, the court also heard testimony as to damages if the plaintiff were to be successful as to the disposition of the two motions. Neither party objected to this procedure.

As is always the case when there is a contest as to whether or not a default should be set aside or a judgment entered on the default, the procedural history and the defendant's excuse for inaction need to be considered. Here, the complaint was filed on July 20, 2000, and the summons was served on Lee Gillespie, the president and principal stockholder in Repower Services, Inc., the defendant, on July 25, 2000.

Because no answer was filed, the plaintiff applied to the clerk for a default on either August 28, 2000, or September 6, 2000, and the default was entered on September 8, 2000. On February 26, 2001, the plaintiff filed the pending motion for

1

default judgment which, apparently, prompted the defendant to file the pending motion to set aside default on March 19, 2001.

The plaintiff is, of course, entitled to the default judgment unless the default is set aside. In order to have a default set aside, the defendant must show "good cause" to do so. M.R. Civ. P. 55(c). "To meet this standard, a party must demonstrate both a good excuse for the failure that led to the default, as well as the existence of a meritorious defense." *Erskine v. Commissioner of Corrections*, 682 A.2d 681, 684 (Me. 1996). The defendant offers arguments to satisfy both prongs of the "good cause" test, but only one need be addressed here as it is dispositive of his motion to set aside the default.

He tells the court by his affidavit and memorandum that when he was served with the summons, he mistook that document for one related to a criminal case stemming from his claim that the plaintiff had taken his boat from the defendant's yard without paying for the work performed. He supports this factual argument with the representation that in July, when he was served with the summons, he was in contact with the D.A.'s Office and had in the past been given "legal documents" by a deputy sheriff at the time of those other contacts. He also tells the court that his attorney told him he might be sued, but assumed that the attorney would be informed of any legal action and would, in turn, inform him.

In the court's view, these factual claims, taken as true, do not amount to a good excuse. First of all, the summons unmistakably informed Mr. Gillespie that the plaintiff had brought a law suit against his company and, in the usual boldface

2

print, told him that Repower Services, Inc. had to serve a written answer in 20 days with the warning that a failure to act within the cited time period may result in a judgment of default being entered against his company. Second, on the same day he was served with the summons in this case, he was served with a summons on a second case, *Gary Jones v. Repower Services, Inc.*, Knox County Superior Court docket no. CV-99-066, which contained the identical information and warnings. Apparently, this second case was related to no criminal case so that on receiving this nearly identical summons, Mr. Gillespie must have understood that such a document was alerting him to the commencement of a lawsuit against his company. Next, in this and the Jones' lawsuit, the deputy sheriff's attestation advises that Mr. Gillespie was provided with both the summons and the complaint. These latter documents plainly advise their reader that a party is seeking remedies against Repower Services, Inc., so that no reasonable lay person could confuse them or their accompanying summons with a subpoena to testify in a criminal case or any other comparable document that the D.A. may want a victim/witness to receive. Thus, the circumstance that Mr. Gillespie received two similar, but separate, civil summonses and complaints on the same day involving different plaintiffs, all of which he ignored, strongly refutes his contention that he reasonably believed one set of papers concerned a criminal case particularly where, as here, the other matter had no apparent connection with a criminal case.

This factual circumstance most closely resembles the unreasonable error of the defendant in *Cutillo v. Gerstel*, 477 A.2d 750, 752 (Me. 1984) in believing that no

action would proceed in his case after his attorney had moved to withdraw. That party had accepted service of the complaint and summons after his attorney had moved to withdraw and had no basis for assuming his case had come to a standstill by virtue of that motion. Here, Lee Gillespie, the defendant's president, knew of the dispute with the plaintiff, was aware of the potential of a lawsuit stemming from this circumstance, and simply chose to disregard legal papers concerning that matter on the unreasonable basis that they were either related to a criminal case or that his lawyer would take care of notifying him of any lawsuit. That he did the same as to a different case underscores the conclusion that his inaction stems from inattention rather than justifiable confusion as a result of the pendency of a criminal case related to this lawsuit. Additionally, even if he were relying on his lawyer to notify him of any lawsuit and to take the necessary steps to respond, the law in Maine is clear that the errors of counsel in failing to timely respond are chargeable to the client. *Cutillo, id.* All this being so, the court must conclude that the defendant has failed to establish the first prong of the "good cause" test so that the second prong need not be addressed, and the default will be left undisturbed.

With respect to damages, the court finds by a preponderance of the evidence that the plaintiff has established the following damages in this case:

| $ 8,200 | - | sums/credits paid by plaintiff |
| $ 1,000 | - | diminution in value of the vessel |
| $16,000 | - | lost chartering income of the vessel |
| $ 750 | - | cost of marine surveyor |
| $25,950 | | |

With respect to the sums and credits paid by the plaintiff, the $8,200

represents $6,600 the plaintiff paid the defendant for work never performed; the balance, $1,600, represents the credit the plaintiff was to have received for the old engine which the defendant sold.

As to the diminution in the value of the vessel, Steven Olson, a marine surveyor testified that the value of the vessel when delivered to the defendant was $4,500, but when returned was $3,500, resulting in a loss of value of $1,000.

The court is satisfied that the plaintiff established lost chartering income of $16,000. While it is true that this sum might arguably be reduced for failure to mitigate damages, the court is also satisfied that the plaintiff's attempts to speed up the repair process and to recover his boat establish adequate mitigation efforts particularly where, as here, he was confronted with a contractor who promised but never delivered timely results.

Accordingly, the entry will be:

Judgment for the plaintiff against defendant Repower Services, Inc. in the sum of $25,950.

So ordered.

Dated: April 2 5, 2001

John R. Atwood
Justice, Superior Court

5